|117  55|
|123  249|

WILLIAM THORNTON *et al.*

*v.*

PHILIP MEHRING.

*Filed at Mt. Vernon March 26, 1885—Rehearing denied May Term, 1886.*

1. LEASEHOLD—*a chattel real—passes to administrator.* A leasehold interest in land for a term of years is personal estate, and on the death of the owner passes to his executor or administrator, whose duty it is to sell and convert it into money for the payment of debts, or distribution; and the heir or distributee can not pursue the property into the hands of the purchaser from the executor or administrator.

2. ADMINISTRATOR—*duty as to chattel real.* An administrator of an estate succeeds to the legal title to the personal property of the intestate, including leasehold interests or chattels real. He holds such title in trust for distribution among those entitled thereto under the law. Upon its sale the trust will attach to the proceeds, and the remedy of the heir is against the administrator, to compel a distribution, or for a *devastavit.*

3. SAME—*deed of administrator construed as to interest conveyed.* The administratrix of a deceased owner of a leasehold estate, after settling up the estate, by her deed sold and quitclaimed "all her right, title, claim and interest in and to" the tract,—"leasehold property,"—the same concluding: And the said M. J. T. "do quitclaim all her right, title, claim and interest to the party of the second part, his heirs and assigns, to have and to hold said premises herein conveyed and described in the lease, *as I might, could or would have done."* She signed her individual name only to the deed, which was sealed: *Held,* that she thereby passed all the title of the intestate to the grantee.

APPEAL from the Appellate Court for the Fourth District; —heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. GEO. W. WALL, Judge, presiding.

Mr. FRANK B. BOWMAN, for the appellants:

The widow as well as the plaintiffs became vested with the title of their distributive shares *eo instanti* upon the death of Joseph Thornton. That the executor or administrator became the absolute owner of a decedent's personal estate never was the law in this country. The right of a distributee attaches upon the death of the intestate. *Perryman* v. *Greer*, 39 Ala. 136; *Bufford* v. *Holliman*, 10 Tex. 571; *Lewis* v. *Lyons*, 13 Ill. 117.

In the trial court the defence relied on the two following points: First, that there was no ouster, as required by section 26, chapter 45, of the Revised Statutes of 1874; and second, that plaintiffs are barred by the Statute of Limitations.

As to ouster, see *Harrison* v. *Taylor*, 33 Mo. 22; *Miller* v. *Meyers*, 46 Cal. 538; *Greer* v. *Tripp*, 56 id. 212; *Marcy* v. *Marcy*, 6 Metc. 372; *Noble* v. *McFarland*, 51 Ill. 230; Freeman on Co-tenancy, sec! 222.

Mr. CHARLES W. THOMAS, for the appellee:

A quitclaim deed is as effectual to convey land as any other. *Brady* v. *Spurck*, 27 Ill. 478.

The deed nowhere mentions an undivided interest. It professes to convey all her title, and that was the whole interest.

The leasehold interest in dispute is personal property, and as such went to the administrator. The personalty of an intestate does not go, as such, to his heirs, without some order of court vesting it in them. The title remains in the administrator until an order of distribution is made. *Neubrecht* v. *Santmeyer*, 50 Ill. 74.

Mr. JUSTICE WALKER delivered the opinion of the Court: *

This was an action of ejectment, brought by appellants, in the St. Clair circuit court, against appellee, to recover the undivided two-thirds of fourteen acres, part of lot 47 *b* of the first subdivision of Cahokia commons, in that county. The land in controversy is situated on the south end of the lot. The declaration contained two counts, to which the general issue was filed, and a trial was had before the court, a jury having been waived by consent of the parties. After hearing the evidence, the court found the issues for the defendant, and, after overruling a motion for a new trial, rendered judgment against plaintiffs in bar of the action, and for costs. They thereupon prosecuted error to the Appellate Court for the Fourth District. The judgment of the circuit court was there affirmed, and the record is brought to this court by appeal.

It appears from the evidence, that under the statute conferring the power, the supervisor of Cahokia commons platted a portion of the commons, and leased this lot to W. W. Singleton for eighty-nine years, from the 24th of December, 1851. Afterwards, on the 2d day of September, 1852, Singleton and wife conveyed the leasehold title to this lot to Joseph and John Thornton, as tenants in common, for the unexpired term. There were two houses on the lot, and each of the grantees entered and occupied these houses, separately, with their several families. Joseph died in April, 1857. He left a widow, Mary Jane, and three children, appellants in this case. John died in 1856, leaving a widow and children. The widow of Joseph remained on the land, or rented it, until she sold to defendant's landlord, Altenbernd. Mary Jane,

---

*Per CURIAM: The foregoing opinion was prepared by the late Mr. Justice WALKER, but in consequence of his ill-health at the term next succeeding, it was not read and considered by the other members of the court until the March term, 1885, which was after his death. At that term the opinion was read, and approved by a majority of the members of the court, and it was ordered to be filed as the opinion of the court, which is accordingly done.

the widow of Joseph Thornton, obtained letters of administration on his estate, and returned an appraisement bill and inventory, but not of the undivided half of this lot. She sold the other property, paid the debts, and made a final settlement of the estate, which was approved by the probate court on the 13th of March, 1861. It nowhere appears that the administratrix either sold or disposed of this leasehold property in the settlement of the estate, but it remained unadministered. The widow of Joseph, deceased, with the appellants in this case, on the 20th day of February, 1860, filed in the St. Clair circuit court a petition for a partition of the lot, making the widow and heirs of John Thornton, deceased, defendants. At the following September term the court decreed a partition of the lot, and appointed commissioners to execute the decree. They reported they had made partition, and assigned to the estate of Joseph Thornton fourteen acres on the south end of the lot, and to the estate of John Thornton the remaining twenty-three and one-half acres on the north end. The report was affirmed by a decree of the circuit court. On the 17th day of September, 1862, Mary Jane Thornton, widow of Joseph Thornton, deceased, sold and quitclaimed the fourteen acres on the south end of lot 47, to Christian Altenbernd, the landlord of appellee. She, in the granting part of the deed, says she sells and quitclaims all her right, title, claim and interest in the part of the lot as described, to have and to hold by the party of the second part, his heirs and assigns, as she might, or could, or would have done.

Appellants insist that upon the death of Joseph Thornton the leasehold title descended to the widow and heirs,—one-third to the widow, and two-thirds to his heirs. It is insisted that this estate thus vested in them in these proportions *eo instanti* on the death of Joseph Thornton, under the provisions of the Statute of Descents, subject to the debts against the estate,—that not having been sold by the administratrix to pay debts, the title still remains in the heirs, and the sale

by the widow only passed her title to one undivided third of the lot assigned to the estate on the partition. It is urged that it was error to hold the administratrix held title to more than one-third of the premises, or that she had power to and did sell more than one undivided third by her conveyance.

Blackstone, in his Commentaries, (book 2, p. 143,) says: "That an estate for life, even if it be *per auter vie,* is a freehold; but that an estate for a thousand years is only a chattel, and reckoned a part of the personal estate." In 1 Williams on Executors, page 425, the rule is stated: "If a lease for years be made to a man and his heirs, it shall not go to his heirs, but his executors." In volume 2, page 609, he says: "It is a general rule of law and equity that an executor or an administrator has an absolute power of disposal over the whole personal effects of his testator or intestate, and they can not be followed by creditors, much less by legatees, either general or specific, into the hands of the alienee." Wentworth on Executors, page 127, says: "The chattels not living are either in houses or lands, most usually, and that in three ways,—first, by lease for years," etc. In Toller on Executors, page 139, it is said: "The personal representative is entitled to the chattels real,—that, is such as concern or savor of the realty, as, terms for years of houses, or land, mortgages," etc.

From these authorities there would seem to be no doubt that the lease in this case was personalty, and the legal title and power of disposal passed to the administratrix on the grant of letters of administration. This doctrine is announced in numerous cases in this court. In the case of *Lewis* v. *Lyons,* 13 Ill. 117, it was held that the administrator held the legal title to the personal estate, but on a bill in equity the court held that money paid to the widow of intestate, under a decree of the court, where the widow had paid the claims allowed against the estate, and it owed nothing, a decree would not be made that the widow pay the money she had

thus received, to the administrator, when all he could do, under the law, would be to pay it back to her. That would have been a wholly useless act. He held the legal title in trust for the distributees. She was a distributee, and so far as the trust related to her rights the trust had been executed, and she had received the money to which she was entitled, and there was nothing on which a court of equity could act. Again, in the case of *Willenborg* v. *Murphy*, 36 Ill. 344, it was said: "If the leasehold estate was personal property, of which we have no doubt, it went to him as administrator, and he had the control of it, and was bound to dispose of it for the interest of the creditors and distributees of the estate." Again, the case of *Neubrecht* v. *Santmeyer*, 50 Ill. 74, was a suit by the heirs of Arne, against the appellant, who had married the widow of Arne, and they had been subsequently divorced. The widow of Arne, as administratrix of his estate, had sold a house in Cairo owned by deceased on the land of another person, for $285, of which she appropriated $85 to her own use, and loaned the remaining $200 to her second husband, who promised to return the money to the children of her deceased husband, upon the youngest becoming twenty-one years of age. Before that time the wife was divorced from appellant. After the youngest became twenty-one, two of them sued appellant for their several shares. It was held that the house was a chattel, which could be sold and removed from the ground; that it was effects in her hands as administratrix, and did not belong to the children until an order of court for distribution had been obtained. The children had no right to claim it, either jointly or severally. It was also said the promise was to the administratrix, if one was made, and the remedy of the children would be against the mother, either by obtaining an order of court for distribution or by action against her as for a *devastavit.*

Thus, it is seen, such a lease is a chattel, and the legal title vests in the administrator, and it becomes his duty to sell

and convert it into money for the payment of debts, or for distribution under the statute. From these cases it is seen that the distributees at law have no right to sue a person to whom the administrator has loaned money to which they have the right to distribution, nor to property not converted into money. We have been unable to find any case which holds that the distributees can compel the administrator to distribute property in kind, the proceeds or money arising from which they are entitled to a distributive share. The very purpose for which an administrator is appointed is to convert the personal property of the estate into money for the payment of debts or for distribution.

It then follows that Mrs. Thornton had the legal power to sell this lease as she did, and as its sale was not necessary for the payment of debts, the money she received for it became and was liable to distribution. Appellants must look to the administratrix for the portion to which they are entitled. As we have seen, they have no right to pursue the property into the hands of a purchaser from the administratrix, who had ample legal power to sell the lease and vest the title in the purchaser.

But it is said she only sold and quitclaimed all of her right, title, claim and interest in and to the land. What was her title, interest and claim? Manifestly the whole legal title to the lease which the law had invested in her. In the deed she says she sells, and she did sell and convey all of the interest, claim and title to the grantee. She did not limit her claim to her equitable rights, but the language is sufficiently comprehensive to embrace, and does embrace, all of the title she then held in the lease, and that was the legal title. She held that title in trust for distribution to those entitled under the law, but it was her duty to convert the lease into money for distribution, which she did, and thereupon the trust ceased as to the lease, and attached to the money she received for it on the sale.

In the view of the case we have already presented, we deem it unnecessary to discuss the question of the bar of the Statute of Limitations.

We perceive no error in the record, and the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE CRAIG, dissenting.