THE CITY OF CHICAGO *et al.* Appellants, *vs.* THE TRIBUNE COMPANY, Appellee.

*Opinion filed December 21, 1910—Rehearing denied Feb. 10, 1911.*

1. SCHOOL LANDS—*school lands are not held by State as trustee for a charitable use.* The grant of school lands by the United States to the State of Illinois was not, under the compact of 1818, a donation of such lands to the State for a charitable use but was a purchase by the State for a valuable consideration, consisting of the surrender by the State of two important rights of sovereignty.

2. SAME—*school lands may be leased or sold as the legislature may provide.* Section 2 of article 8 of the constitution puts it beyond the power of the legislature to divert school lands to any other purpose than the support of schools, but the legislature may, without violating such provision of the constitution, authorize a lease or sale of such lands, and the mere lease or sale thereof under legislative authority is not, of itself, a diversion of the land from its purpose.

3. LEASES—*a long-term lease is not a sale.* A lease for a fixed and definite period, conditioned upon the payment of a fixed annual rental, even though for a long term of years, is a lease and not a sale, notwithstanding the language of the Conveyances act and the act relating to judgments, which specifies that long-term leases shall be included within the term "real estate."

4. SAME—*when surrender of right to re-valuation is not without consideration.* The surrender by a lessor of the right to periodical re-valuation as the basis for fixing the annual rental for the ensuing period of years is not without consideration, where the lessee agrees, in consideration of the waiver of such right and the fixing of a definite annual rental for the remainder of the term, to erect a building upon the land to cost not less than $400,000, and which, in fact, cost nearly $2,000,000 to erect. ·

5. CONTRACTS—*beneficiary should be allowed to judge whether a trustee's contract is fair and favorable.* Where a trustee, or a board occupying the same relation and having duties to perform for a beneficiary, enters into a contract with a party who is represented by such trustee or a member of the board, the beneficiary should be allowed to judge whether the contract is fair and favorable, and to confirm or avoid it, according to his judgment.

6. SAME—*when contract by board of education is not affected by fact that a member of the board is attorney for the lessee.* The mere fact that at the time certain modifications and agreements were made by a board of education with reference to a lease of

school lands one member of the board was the attorney for the corporation lessee does not affect the validity of the contract, where such member was not employed by the lessee or authorized to represent it generally, but only to defend certain libel suits.

7. SAME—*when an objection to contract of board of education is obviated by ratification.* An objection to a contract between a board of education and a lessee of school lands, based upon the ground that the lessee was at the time represented in certain matters by an attorney who was a member of the board and who acted with the board in the transaction, is obviated where the contract and leases were subsequently ratified and confirmed after such attorney ceased to be a member of the board.

8. The court holds, in this case, that the charges of fraud and unfair dealing with reference to the appellee's leases are without basis in the evidence and that the decree dismissing the bill was right.

APPEAL from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding.

CLARENCE N. GOODWIN, FRANK HAMLIN, and ANGUS ROY SHANNON, for appellants.

ISHAM, LINCOLN & BEALE, and DONALD L. MORRILL, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The title to school lands in the city of Chicago is vested in the city by a grant from the State in trust for the use of schools, and the control and management of the same are vested in a board of education of twenty-one members, subject to control by the legislature and with powers defined by the statute. On May 8, 1880, the appellee, the Tribune Company, was occupying under an existing lease lots 12, 13 and 14 in block 142, in School Section addition to Chicago, which was school property, and had improved the same with a building, which it occupied for the purposes of its business. On that day the board of education,

one of the appellants, having the right, by a provision of the School law, to lease the property, executed a lease to the Tribune Company for a term of fifty years, at an annual rental of $7776 for the first five years and thereafter at an annual rental of six per cent of valuations made every five years by appraisement. Under this lease an appraisement was made in 1885, which was the subject of litigation between the parties, and on June 15, 1888, the board of education and the Tribune Company executed an agreement reciting the dispute between the parties and the making of said agreement for the purpose of compromising and adjusting the matters in dispute. That agreement extended the term to May 8, 1985, and changed the re-valuation periods from five years to ten years, the first appraisal to be made in 1895 and each appraisal to stand for ten years. It was therein agreed that the lease as so changed should stand in full force and effect. The rent was payable quarterly in advance, and the Tribune Company paid rent on the basis of six per cent of the appraised valuation. Under the lease another appraisement was to be made on May 8, 1895, and the appraisers then fixed the value of the three lots at $500,000 and the rental for the ensuing ten years at $30,000 per year. There were negotiations between the Tribune Company and the committee of the board of education for a fixed and certain rental for the remainder of the term, and on May 30, 1895, the board of education and the Tribune Company entered into an agreement fixing such yearly rental at $30,000 from May 8, 1895, to May 8, 1905, and a yearly rental of $31,500 for each of the remaining eighty years of the term, all payable in equal quarterly payments in advance. The board of education waived the re-valuations, and it was provided that, except as so changed, the lease of 1880 and the supplemental agreement of 1888 should stand and be in full force and effect. There were leases of lots 15, 16 and 17 in the same block similar to the one held by the Tribune Company and which had been

extended to 1985 but still provided for re-valuations every ten years. The appraisement of these lots on May 8, 1895, was $84,000 each, cash value, and the annual rental for the ten year period following was $5040 each. On November 17, 1897, the Tribune Company had acquired the leases of lots 15 and 16, and on that day the board of education and the Tribune Company entered into an agreement reciting that the company owned the leasehold in lot 15 under a lease to Thomas Mackin and the leasehold in lot 16 under a lease to Samuel Gregsten, and the company agreed to pay as rent for said lots $10,080 a year from February 8, 1898, until May 8, 1905, and an annual rental for the balance of the term of $10,580. The board of education waived the re-valuation clauses in the leases, and in consideration thereof the Tribune Company agreed to put improvements on the five lots of the value of not less than $300,000. The leases, except as modified by the agreement, were confirmed and declared to be in full force and effect. The Tribune Company also acquired the leasehold of lot 17, and on December 14, 1899, the board of education and the Tribune Company made a further agreement, by which the company agreed to pay an annual rent for that lot of $5040 from February 8, 1900, to May 8, 1905, and for each of the next ten years $5292, and an annual rental of $5556.60 for each of the remaining seventy years of the term. The board of education waived the re-valuation clause in the lease of that lot, and the Tribune Company agreed to erect a new building on the six lots to cost not less than $400,000. This agreement ratified and confirmed all the preceding leases, supplemental leases and agreements and provided that they should stand and be in full force and effect as modified. The Tribune Company erected a building on the premises for about $1,800,000 and paid rent quarterly in advance at the rates specified in the leases and agreements as modified. The city of Chicago afterward filed the bill in this case asking the court to set aside all the said leases,

instruments and agreements, and the board of education was added as a complainant, by amendment, in 1907. The bill and amended bill were answered and the issues were referred to a master in chancery, who took the evidence and reported in favor of the defendant on all the issues of fact, and recommended, as a conclusion of law, that the bill should be dismissed for want of equity. The chancellor heard and considered the evidence on exceptions to the report of the master, overruled the exceptions and dismissed the bill for want of equity. The complainants prayed an appeal, and alleged that the instruments in question were executed in violation of the State and Federal constitutions and had the effect to deprive them of constitutional rights. The appeal was therefore allowed to this court and was perfected.

Section 2 of article 8 of the constitution provides that all property donated, granted or received for schools, and the proceeds thereof, shall be faithfully applied to the objects for which such gifts or grants were made, and it is assigned for error that the modifying agreements of 1895, 1897 and 1899 violated that provision by diverting school property from the objects for which it was granted, and also violated the fourteenth amendment to the constitution of the United States by surrendering to the defendant, without consideration, the benefit of future increase in the value of the property and amounted to a taking of property without due process of law. So far as section 2 of article 8 of the constitution is concerned, there was no allegation in the bill and no evidence produced tending to show that the rent had not been or was not intended to be faithfully applied by the board of education to the use of the schools, even if misconduct of that kind would affect the defendant without its fault. The constitutional provision puts it beyond the power of the legislature to divert school lands to any other purpose than the support of the schools, but there has been no diversion of this property to any

other purpose.  We are unable to perceive any connection between the fourteenth amendment to the constitution of the United States and the agreements sought to be set aside, and it is not true that the right to re-valuations was surrendered or given away without a valuable consideration.

It is also contended that the agreements were in violation of the compact created by the act of Congress of April 18, 1818, offering to the constitutional convention held at Kaskaskia section 16 in every township for the use of schools and the acceptance of the same by the convention on August 26, 1818.  Counsel say that the school lands in Chicago are held by the city under a donation from the government for a charitable use, and that the agreements constitute a gross breach of the trust.  The proposition of Congress was to grant the school lands to the State, together with other things, subject to the conditions that the State should by an irrevocable ordinance exempt from taxes lands sold by the United States for five years after the day of sale and bounty lands held by the patentees or their heirs for three years from the date of the patents, and that lands of non-residents should never be taxed higher than lands of residents of the State.  The question whether the compact made the State the trustee of a charitable use was decided in *Bradley* v. *Case,* 3 Scam. 585, where it was held that the State purchased the lands for a valuable consideration by surrendering two important rights of sovereignty; that the United States was not and never had been a donor for charitable purposes and had no right whatever to control the lands vested in the State.  The doctrine of that case was reiterated in *Trustees of Schools* v. *Schroll,* 120 Ill. 509, and adhered to in *Black* v. *Chicago, Burlington and Quincy Railroad Co.* 237 id. 500.  School lands are not held by the State as trustee for a charitable use, and they may be leased or sold, as the legislature may provide.  The School law of 1872, and each subsequent act, has provided that the board of education may lease such property, or the

city may sell it, upon request of the board. There was no violation of any compact or agreement with the United States.

It is next argued that the leases, as extended until 1985, amounted to a sale of the property, which was beyond the power of the board of education, and the basis of the argument is that the terms were long. Reliance is placed upon the act in regard to judgments, which declares that leasehold estates, when the unexpired term exceeds five years, shall be included in the term "real estate," as used in that act, and also upon the Conveyance act, as including leases like these. The question raised as to the nature or quality of a leasehold estate has little or nothing to do with the question whether these leases constituted a sale of the property. A decision that a lease for a long term is personal property or a chattel real, or real estate proper, would not affect the question whether the instrument is a lease or a sale. Words used in the statute are to be taken in their ordinary acceptation, and a lease, although for a long term, with payments of annual rent, is not a sale, which is a grant of absolute ownership. These leases were for a fixed and determinate period, conditioned upon the payment of fixed annual rental, and have all the characteristics of a lease and none of the features of a sale.

It is also urged that the agreements were unfair, improvident and fraudulent, and therefore ought to be set aside. It is charged that the modifications made in 1895 and 1897 were fraudulent and voidable in law because one Alfred S. Trude was a member of the board of education and acted in the matter and was also attorney for the defendant. He was not a member of the board in 1899, when the last modification was made and all the leases were ratified and confirmed by the board of education, so that the validity of the leases does not depend upon his action. If the modifications were voidable at the election of the board, their ratification years afterward would constitute an elec-

tion to confirm them. However, the question raised deserves consideration, and we are of the opinion that the leases were not voidable on the ground alleged. Trude was an attorney at law and had been employed by the defendant in various libel suits covering a number of years, but his employment was specific for the particular cases, and he was never employed by the defendant in relation to its business affairs or any other matters than those specified. He was not an officer of the defendant nor authorized to act for it except in the defense of suits for a particular class of torts, and he was no more a representative of the defendant than any attorney is the representative in business affairs of a client who habitually employs him in litigated cases. There is a controversy between counsel concerning the law in cases where trustees, or a body or board occupying the same position and having duties to discharge for a beneficiary, enter into a contract with a party who is one of the trustees or a member of the body or board, or who is represented by a member authorized to act for him, and there is some difference of opinion between different courts on that question. Some courts have held that if the vote of the party or his representative, as a member of the body or board, was not necessary to the contract, and the contract is such that the court considers it fair and just, it will be sustained. In that view contracts are made or unmade, according to the judgment of the court concerning the fairness of the contract, if the act of the interested party or his representative was not essential to the making of the contract. It seems to us a better rule that the beneficiary should be allowed to judge whether the contract is fair and favorable to his interests and to confirm or avoid it according to his own judgment rather than to have the court determine the question for him, and ordinarily no one can say that there would have been a majority sufficient to do the act if the interested member had performed his duty and used his best efforts for the

one to whom he owed the obligation. The general rule is, that one occupying a trust relation cannot place himself in a position which would subject him to conflicting duties or expose him to the temptation of acting contrary to the interests of the party to whom he owes a 'duty. We regard the rule governing trustees, and those occupying confidential relations generally, as the better one. (*Aberdeen Railway Co.* v. *Blaikie,* 1 Macq. 461; *People* v. *Township Board,* 11 Mich. 222; *Nunemacher* v. *City of Louisville,* 98 Ky. 334; *Traction Co.* v. *Board of Public Works,* 56 N. J. L. 431; *City of Ft. Wayne* v. *Rosenthal,* 75 Ind. 156; *Ashley* v. *Kinnan,* 2 N. Y. Supp. 574.) If the board of education was, in fact, entering into contracts with one of its own members as a representative of the defendant, we think the contract would be voidable at the election of the complainants, but the relation of Trude to the defendant was not such as would make him its representative in the transaction. Perhaps a fine sense of propriety would lead one who is habitually employed by another, or with whom he has profitable business relations, to withdraw entirely from any participation in a matter in which such person is concerned, and if he does act, perhaps the contract would receive a closer scrutiny than it otherwise would. We do not regard the modifications of 1895 and 1897 as voidable on account of the participation of Trude, leaving out of view the ratification in 1899.

Finally, it is contended that the waiver of the re-valuation clause in the leases was fraudulent, as a matter of fact, because the school fund was thereby deprived of increased rentals in the future which would result from re-valuations. There had been a great advance in the value of the property, but whether there would be further advances, or the extent of them, was purely guesswork and speculation; but if such advances could be reasonably expected, the evidence was conclusive that leases with re-valuation clauses had been generally abandoned as being unfavorable to the mak-

ing of valuable improvements on leased property and objectionable in many other respects, which were stated by many disinterested witnesses of large experience. It is not necessary to go into the reasons given in detail by the witnesses, which are entirely satisfactory and support their conclusions. The defendant, in consideration of the waiver of re-valuations and a fixed and certain rental, agreed to erect on the lots buildings to cost not less than $400,000, and, in fact, did erect a building that cost about $1,800,000.

The charges of fraud and unfair dealing, and of the consequent invalidity of the leases and the modifications of the same, are without any basis in the evidence, and we do not see how the chancellor could have reached any different conclusion. The charges of the bill not being sustained by the proof, the chancellor did right in dismissing it.

The decree is affirmed.                    *Decree affirmed.*