### CHICAGO AUDITORIUM ASS'N v. WILLING et al.

Circuit Court of Appeals, Seventh Circuit. June 7, 1927.

Rehearing Denied August 30, 1927.

No. 3733.

**1. Equity ⚖➣1—Inability to catalogue facts within some recognized head of equity jurisdiction will not necessarily prevent equity from taking jurisdiction.**

Though it may be satisfactory and practical to predicate jurisdiction in equity on ability to bring facts within recognized head of equity jurisdiction, inability to so designate particular case will not necessarily prevent equity from taking jurisdiction.

**2. Quieting title ⚖➣6—In proper case, equity will relieve holder of real estate from injury arising from adverse claim.**

In proper case, equity will relieve holder of real estate from injury or damages which arise from presence of hostile or adverse claim.

**3. Equity ⚖➣17—Equity will take jurisdiction to relieve cloud on personal property.**

Equity will take jurisdiction to, relieve against cloud on title, even though subject-matter be personal, rather than real, property.

**4. Quieting title ⚖➣2—99-year and 198-year leases are "chattels real," for purpose of determining jurisdiction of equity to remove cloud on title.**

99-year and 198-year leases are "chattels real," for purpose of determining jurisdiction of equity to remove cloud on title, though for some purposes they may be described as chattels.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Chattels Real.]

**5. Quieting title ⚖➣7(1)—Equity has jurisdiction to remove cloud on lessee's title, though cloud was created by same instrument creating title.**

Existence of common instrument creating lessee's title and also cloud thereon does not necessarily call for refusal of court of equity to act in suit to remove cloud on title.

**6. Evidence ⚖➣19—Court takes judicial notice of changes in building art during last 40 years.**

Court can and will take judicial notice of changes in building art during last 40 years.

**7. Quieting title ⚖➣7(1)—Provision adverse party insists is against rebuilding, casts cloud on 198-year leasehold.**

Provision in 198-year lease which adverse party insists is against rebuilding, casts cloud on title of such leasehold.

**8. Quieting title ⚖➣6—Adverse claim becomes removable cloud on long-term leasehold, if it impairs merchantability, materially affects marketability, or defeats "legitimate use and enjoyment" of property.**

Hostile or adverse claim becomes removable cloud on title to long-term leasehold, if it impairs merchantability of lessee's title, materially affects marketability of property, or defeats or impairs "legitimate use and enjoyment" of property, which includes right to construct suitable building thereon, so that maximum rental may be secured.

**9. Quieting title ⚖➣7(1)—Defendant's position that clauses of long-term lease deny lessee's right to replace present building held removable "cloud on title."**

Position of defendants, asserting that clauses of long-term leases deny to lessee right to replace present building, held to constitute removable "cloud on title."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Cloud on Title.]

**10. Quieting title ⚖➣34(1)—Certainty of lessee's right to have cloud on title removed must ordinarily be determined in first instance by allegations of bill.**

Certainty of lessee's right to have cloud on title removed must be determined in first instance by allegations of bill, unless they charge conclusions, or facts from which different conclusions are unavoidable, and not by facts which ultimately may develop when chancellor hears evidence.

**11. Quieting title ⚖➣7(3)—Clauses of long-term lease relative to building to be erected held not void, as against contention that void document furnishes no basis for suit to remove cloud from title.**

Clauses in long-term lease relative to requirements and specifications for building to be erected held not void, as against contention that, being void, they furnish no basis for suit to remove cloud on title.

**12. Quieting title ⚖➣4—Lessee of city property under long-term lease, suing to remove cloud because of defendant's position that rebuilding was not permitted, had no "adequate" remedy at law.**

Lessee of city property under long-term lease, suing to remove cloud on title because of defendant's position that clauses of leases do not permit replacement of building, held not to have adequate remedy at law, since "adequate" remedy must be in control of party seeking relief.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Adequacy—Adequate.]

**13. Mortgages ⬉193—Mortgagee held without legitimate complaint because of mortgagor's replacement of building on land held under 198-year lease, which authorized such rebuilding.**

Mortgagee *held* to have no legitimate complaint because of mortgagor's rebuilding on land held under 198-year lease, where such rebuilding was permitted by lease, since mortgagee took its bond subject to such right and building would add to security.

**14. Action ⬉6—Suit to remove cloud on title to long-term leasehold held not barred on ground that only declaratory decree was asked.**

Suit to remove cloud on title to long-term leasehold may be maintained, as against objection that only declaratory decree was asked, construing lease and establishing rights thereunder.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit by the Chicago Auditorium Association against Mark Skinner Willing and another, as trustees, and others. From a decree dismissing the suit (8 F.[2d] 998), complainant appeals. Reversed, with directions.

Walter L. Fisher, of Chicago, Ill., for appellant.

Homer H. Cooper, of Chicago, Ill., Watson Washburn, of New York City, and Frank H. McCulloch, of Chicago, Ill., for appellees.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

EVAN A. EVANS, Circuit Judge. This appeal involves solely a question of equity jurisdiction. The District Court dismissed the suit, concluding that the alleged facts were insufficient to invoke the jurisdiction of a court of equity. It did not pass upon the existence of facts necessary to sustain the relief sought, providing the court had jurisdiction. In other words, two questions were presented to the District Court. One was a question of law—the sufficiency of the allegations of the bill to invoke the court's jurisdiction. The other was one of fact—the sufficiency of the evidence to justify the relief sought. Having ruled adversely to appellant on the first question, the District Court made no findings on the second question.

It was agreed in this court—though the briefs are not so limited—that we should pass on the first question only, and in case we held for the appellant the cause should be returned to the District Court, that the issues of fact might be there tried and determined. Judge Wilkerson, in his opinion

(8 F.[2d] 998), has so well and fully stated the facts as to meet the approval of both counsel. We adopt the statement thus made.

Speaking in a general way, appellant, at the outset of this argument, is confronted by two contentions, which it must meet, either one of which, if sustained, will be fatal to the maintenance of this suit. Both of them were upheld by the District Court. They are:

(a) The facts as alleged in the bill are insufficient to invoke the jurisdiction of a court of equity.

(b) The bill seeks nothing but a declaratory decree.

Perhaps the two objections are not so unrelated as might at first appear. Appellee's position under the first objection may be stated in a quotation from McElroy v. Masterson (C. C. A.) 156 F. 36:

"The bill of complaint should be dismissed, unless it can be maintained that there is a comprehensive discretion reposed by modern equity jurisprudence in the chancellor to make and unmake contracts of parties, sui juris, constrained only by no other limitations than those which meet the approval of his conscience. Courts of equity are now as much required as courts of law to enforce contracts free from vitiating elements of fraud, and to refrain from making contracts for the parties on which their minds never met. In the formative period of equity jurisprudence, the English Chancellors, in the absence of established principles and recognized sensible precedents, were much given to the pursuit of their own sense of absolute right and the dictates of their own individual conscience. But in the process of development equity jurisdiction has assumed more the qualities of a composite system of settled rules and principles, by which the property rights of parties are measured and limited, and are rendered more certain and stable."

To use their own language:

"Long-settled rules bound the exercise of equity jurisdiction, and, broad though they are, they do not validate invocation of an unlimited fount of remedies for any and all predicaments. Appellant would expand equity into 'arbitrium boni viri,' a conception freely translatable as the decision upon the peculiar facts which would be made by a man of intelligence and good character, regardless of settled law. If that system of administering justice ever be accepted, every decision becomes a ·virtual arbitration, all certainty of lawful rights and obligations is prevented, and constitutional limitations upon the powers of courts are swept away.

Hence the requirement that a plaintiff must predicate his prayer for relief upon some settled principle or head of jurisdiction constituting the department of equity. Observance of these rules affords security and stability to vested rights. Disregard means confusion, uncertainty, and, in this instance, unlawful taking of property."

Appellant challenges these limitations to equity jurisdiction, and asserts in the language of Pomeroy, Equity Jurisdiction (4th Ed.) § 62:

"The whole question by which the extent of the equity jurisdiction is practically determined is no longer whether the case is omitted by the law, or the legal rule is unjust, or even the legal remedy is inadequate, although the latter inquiry is still sometimes made and treated as though it were controlling. The question is, rather, whether the circumstances and relations presented by the particular case are fairly embraced within any of the settled principles and heads of jurisdiction which are generally acknowledged as constituting the department of equity. * * * A court of equity will not, *unless perhaps in some very exceptional case*, assume jurisdiction over a controversy the facts of which do not bring it within some general principle or acknowledged head of equitable jurisprudence."

To this statement counsel add their own views of the present litigation:

"While we think there should be no necessity of so doing, we expect to show that, if the bill in this case discloses meritorious grounds for equitable relief, there is nothing to prevent the court, should it prefer that alternative, from accrediting the bill with a conventional name. It may be convenient for ordinary purposes of classification to have at hand a cabinet of standard labels, but our position is that no such catalogue can deprive equity of its fundamental and most valuable attribute of administering relief according to the exigencies of each case as it arises."

While the opposing counsel thus approach the controversy at issue from different angles, they do not differ widely when they reach the narrow issue here involved.

[1] While it may be, and in most instances is, entirely satisfactory and practical to predicate jurisdiction upon our ability to bring the facts within some recognized head of equity jurisdiction, we cannot believe that the doors opening to the courts of equity are numbered, or labeled, or limited. The origin and growth and entire history of equity jurisdiction repels the conclusion that it has

ceased to grow, or that only those cases may be recognized which fall within the heretofore existing heads or branches of equity.

Perhaps these foregoing abstract statements have been pursued too far, for after all it is asserted by appellant's counsel that its cause falls under one of the recognized heads of equity, namely, a bill to remove a cloud on title. In fact, it may be that the so-called enlargement of equity jurisdiction applies more to the rules governing these recognized heads of equity jurisdiction, and to the remedies and the relief obtainable thereunder, than to the general subject of equity jurisdiction.

Further concessions on the part of appellant, that the equity jurisdiction of the District Court, from which this appeal is taken, has not been enlarged by any statute of the state of Illinois; that its bill is not a bill of peace, or a bill to relieve from a declared forfeiture, or a bill quia timet, or one to enjoin a breach of contract, narrow the issue. In other words, it asserts that, while "its right to relief" is "one of substance and not of form," yet if "an old label" must be applied "it is a bill to remove a cloud on title." It asserts that its bill alleges the existence of the three necessary facts which, when present, invoke the jurisdiction of a court of equity: (1) The existence of a substantial property right; (2) present or imminent deprivation of the beneficial use and enjoyment of that right; (3) lack of adequate legal remedy to protect the owner of such right in the use and enjoyment thereof. [2] Citations of authorities are hardly necessary to sustain the proposition that in a proper case equity will relieve a holder of real estate from the injury or damages which arise from the presence of a hostile or adverse claim. Holland v. Challen, 110 U. S. 15, 3 S. Ct. 495, 28 L. Ed. 52; McArthur v. Hood Rubber Co., 221 Mass. 372, 109 N. E. 162.

The objections to the bill as one to remove a cloud on title may be considered under the following four heads:

(a) Appellant's title under the Illinois decisions was not a legal title, and therefore not susceptible of being clouded.

(b) No hostile or adverse claim is asserted by any appellee, and therefore no cloud exists.

(c) Whatever adverse claim or cloud is alleged to exist grew out of the very instrument which constitutes the basis of appellant's title, and being in the same instrument, it is not a cloud on title removable in equity.

(d) If doubt respecting appellant's title exists by virtue of certain provisions of the lease, then appellees' claim is more than a cloud, and the parties must resort to an action at law to determine the same.

(a) Appellant's interest in the real estate involved consists of several leases, some for 198 years and others for 99 years. Appellees insist that under the Illinois law these leases are chattels (Chicago v. Tribune Co., 248 Ill. 242, 93 N. E. 757; Thornton v. Mehring, 117 Ill. 55, 25 N. E. 958), and do not convey an interest in land. From this fact they argue that equity will not grant relief to a mere holder of a chattel, a lessee for a term of years.

There are two answers to this contention. The first one assumes that appellant's leases are mere chattels; the other assumes they are chattels real, as defined by Judge Wilkerson.

[3] Assuming the leases to be chattels, we adopt the rule announced in many well considered cases and contended for by Pomeroy (Pomeroy's Equitable Remedies [2d Ed.] § 2151), and hold that equity will take jurisdiction to relieve against a cloud, even though the subject-matter be personal, rather than real, property. Suits to remove cloud on title, where the property is personal, have been repeatedly sustained. Magnuson v. Clithero, 101 Wis. 551, 77 N. W. 882; Voss v. Murray, 50 Ohio St. 19, 32 N. E. 1112; Sherman v. Fitch, 98 Mass. 59; Earle v. Maxwell, 86 S. C. 1, 67 S. E. 962, 138 Am. St. Rep. 1012; Pomeroy's Equitable Remedies, § 369; Thompson v. Emmet Irrigation District (C. C. A.) 227 F. 560; Rosenbaum v. Foss, 4 S. D. 184, 56 N. W. 114; N. Y. & N. H. Railroad v. Schuyler, 17 N. Y. 592; Stebbins v. Perry County, 167 Ill. 567, 47 N. E. 1048.

[4] The force of precedents rather than the persuasion of logic sustain the distinctions made between real and personal property as the subject-matter of suits to remove clouds on title.

This conclusion is, of course, fortified by the fact that the lease under consideration is, after all, a chattel real. It conveys an interest in land, People v. Shedd, 241 Ill. 155, 89 N. E. 332, though for some purposes it may be described as a chattel. We conclude that appellant's leases form such a substantial property right as entitled it to admittance into a court of equity, and to relief therefrom, other necessary facts being present. Johnson v. Samuelson, 82 Neb. 201, 117 N. W. 470, 130 Am. St. Rep. 666; German-American Savings Bank v. Gollmer, 155 Cal. 683, 102 P. 932, 24 L. R. A. (N. S.) 1066.

More serious are the objections (b) and (c), which will be considered together. It is admitted that the cloud on appellant's title, if any exists, arose out of the same instrument that created appellant's title. That such fact alone robs equity of its jurisdiction appellant denies.

Decisions are cited which support appellees' contention. We are at a loss, however, to understand why such a rule should prevail. Why must the cloud appear in an instrument other than the one upon which appellant relies for its title? The basis of equity jurisdiction, the reasons which originally, and have since, induced courts of equity to act to remove clouds on title, are in no way connected with, or predicated upon, the separate and isolated character of the written document that creates the cloud. It may be admitted that removable clouds most frequently appear in instruments other than the one through which complainants trace their title. In fact, it no doubt frequently occurs that, if a single instrument creates the plaintiff's right and also the so-called cloud, the asserttion of the latter *necessarily* casts such doubt upon appellant's title as to require a denial of the relief sought.

Particularly is this true where the cloud is found in the granting clause of appellant's title. This was apparently the situation in First Congregational Church v. Page, 257 Ill. 472, 100 N. E. 975, for the court said: "It would be a rather anomalous situation to permit one to remove as a cloud upon his title a part of the granting clause of the only instrument under which he claims."

[5] We are not satisfied that the existence of a common instrument creating appellant's title and appellees' cloud calls for a refusal of a court of equity to act. Rather should the question be determined by an examination of the document, to ascertain whether the so-called cloud is one which a court of equity should remove, and also whether the so-called cloud impairs appellant's title or rights, or casts such doubt upon it as to require a denial of the relief sought.

Examining the appellant's muniment of title, its leases, we find that it has an unqualified grant for 99 years (in most part, 198 years) of a right to occupy the land described. In other words, it is given a lease of land located in the heart of Chicago, which property is of large value, and in consideration thereof it is required to pay a large sum of money as rental. The mere grant of the right to occupy the land for a large cash rental gives rise to the inference that the occupants were to use the land,

rather than to permit it to lie idle. The use of such property in a city like Chicago, and at the date this lease was executed (the real estate being in the business district), leaves no room for doubt that such property thus leased was to be used as the foundation for a building, for the use of which rentals were to be collected. While this would be the unavoidable deduction to be made from the execution of the lease, other provisions of the lease conclusively establish the correctness of this conclusion.

[6] In the absence of any provision in the lease itself, it is likewise hardly conceivable that a lease for 198 years, or even one for 99 years, should be so construed as to deny to the lessee the right to rebuild as changing conditions require. It may be conceded that modern structures are more or less permanent. They are more so now than in 1889, when the leases were executed. But the changes in the building art in the last 40 years, of which the court can and will take judicial notice, justify the conclusion that permanency in buildings is but a relative term, and particularly so in a city like Chicago.

In short, appellant shows it possessed valuable rights; that their existence was neither doubtful nor uncertain; that the enjoyment of these rights was possible only through the use of the rented ground as the site for a building; that the location of the property, its large value, the size of the rentals, and the taxes conclusively negative the possibility of the lease being executed, save for commercial purposes. And it then follows, as an unavoidable deduction from the grant of a lease for 198 years, that the building or buildings which were to be constructed thereon should, from time to time, be repaired, and at *some time* during the existence of the lease be *replaced* by new buildings.

Appellant alleges that it is unable to rebuild because of the cloud on its title occasioned by certain provisions in the lease, and because of appellees' position in respect to such provisions. It seems to us that appellant, in making these allegations, has gone far toward establishing its right to have a court of equity hear the evidence. Appellees insist that there is no cloud on appellant's title; that no verbal position taken by any of them can create a cloud removable in a suit of this character. It further contends that, if this position is not sound, then the so-called cloud is not such a one, as the law contemplates, but instead throws such doubt on appellant's claim as defeats its right to bring this suit.

[7] First let us consider the nature of the alleged cloud, and then determine whether it comes within the legal definition of a cloud on title. Bearing in mind that the enjoyment of this lease is dependent upon appellant's right to build a structure of suitable size and character to meet the needs of the community, it is apparent that appellant must finance the cost of such a building. To do so, it must have an unhampered entrance into the money market. To raise $15,000,-000 or $20,000,000, the builder's title must not only be free from doubt, but free from the suspicion of doubt. A cloud on title is a relative term. What may be passed as merchantable under certain conditions would be rejected under different circumstances.

But no examiner of title could, or would, have the temerity to urge that a provision against building, or a provision which an adverse party insists is against rebuilding, casts no cloud on the title to a 198-year leasehold. And, too, though there be no negative provision appearing in the lease, a clause susceptible of such construction, though it be a forced one, may, if accompanied by a hostile assertion by an adverse claimant, be the basis of a cloud on title.

[8] What, then, are the requirements of an adverse claim that will make it a cloud on title, as that term is used in courts of equity in suits of this character? What is the cloud of which appellant complains?

Upon the first question the decisions may be divided into the strict and the liberal holdings. From the latter, which we are inclined to follow, we conclude that a hostile or adverse claim becomes a removable cloud, if it impairs the merchantability of appellant's title, materially affects the marketability of appellant's property, or defeats or impairs the legitimate use and enjoyment of appellant's property, which includes its right to construct a suitable building thereon, so that the maximum rental may be secured. The following are a few of the many decisions available: McArthur v. Rubber Co., 221 Mass. 372, 109 N. E. 162; Witt v. Sims, 140 Ga. 48, 78 S. E. 467; Johnson v. County, 50 Mont. 253, 146 P. 471; Hawes v. Clarke, 159 App. Div. 65, 144 N. Y. S. 11; Deckenbach v. Deckenbach, 65 Or. 160, 130 P. 729; Campbell v. Disney, 93 Ky. 41, 18 S. W. 1027; Kittle v. Bellegarde, 86 Cal. 556, 25 P. 55; Palmer v. Yorks, 77 Minn. 20, 79 N. W. 587; Pacific Coast Pipe Co. v. Hedican, 61 Wash. 576, 112 P. 655, Ann. Cas. 1912C, 833; Bird Timber Co. v. Snohomish County, 88 Wash. 90, 152 P. 689; Fox v. Williams, 92 Wis. 320, 66 N. W. 357; Broderick v. Cary, 98 Wis. 419, 74 N. W. 95.

In McArthur v. Hood Rubber Co., supra, the court says, "Whenever a deed or other instrument exists which may be used to vex or injure the owner, or which may cast a suspicion upon his title or interest and he cannot immediately protect or maintain his right fully and completely by proceedings at law, then a court of equity will afford relief by a decree of such scope as justice may require to adjust the rights of the parties."

It is true that many of these decisions (though not the Massachusetts case) are under statutes that are broad and inclusive in their language. Doubtless these statutes have had a large influence in determining the character of a hostile claim removable as a cloud on title. But whether the causes be traced to these statutes, or, as in the Massachusetts case, to the necessities of society, courts have given to an adverse or hostile claim a definition far more inclusive than the one which obtained several decades ago.

[9] Appellant also alleges that appellees take the position that the clauses deny to appellant the right to replace the present building with a new and modern structure. It is not contended that appellee's verbally stated position alone constitutes a cloud. It is appellees' position respecting the lease, this written document of record (which position is manifested by oral pronouncement, and by their refusal to consent to the rebuilding), *in addition to the clauses,* that creates the infirmity in appellant's asserted right and defeats, or at least impairs, its enjoyment of its lease. It seems to us that this constitutes a removable cloud on title.

[10] Plaintiff's right must be clear. But the certainty of such right must be determined in the first instance by the allegations of the bill (unless they charge conclusions or facts from which different conclusions are unavoidable), and not by the facts which ultimately may develop when the chancellor hears the evidence. There is nothing illogical or fatally weak in appellant's allegations that this clause, together with appellees' stand under it, impairs its ability to finance the undertaking, without which it cannot rebuild.

[11] Several clauses of the lease are herewith quoted:

"All columns shall be of iron, stone, or brick, and all iron and steel columns and girders shall be fireproofed with a covering of porous terra cotta or hollow tile, or like material; all beams, joists, and roofing beams and joists shall be of iron or steel; all constructional floors shall be arches of hollow tile or like materials; all partitions shall be of brick or hollow tile; the roof shall be iron, brick, or hollow tile; the stage of the auditorium in said building, however, may be built of such material and in such manner as may seem most expedient to party of the second part.

"And the said party of the second part further covenants and agrees that it will, at all times during the term hereby demised, at its own proper cost and charges, keep the building situated upon said demised premises, and all appurtenances belonging thereto, in good repair, and in a safe and secure condition, and that it will keep all rooms in said building in a good, safe, clean, and tenantable condition and repair during the entire term of this lease.

"If said buildings, or any part thereof, shall at any time or times during the continuance of the term hereby granted, be destroyed or damaged by fire, the party of the second part shall rebuild or repair the same upon the same plan as before the said fire happened, or such other plans as by the party of the first part shall be approved in writing and have the same rebuilt and ready for occupancy within two years from such loss or destruction, and that, as often as said buildings or improvements shall be burnt down or damaged by fire, all and every sum or sums of money which shall be recovered or received by the party of the second part for or in respect of said insurance, shall be laid out by it in rebuilding or repairing said building; that in the event of the determination of this lease at any time before the expiration of the term of 99 years hereby demised, for the breach of any of the covenants herein contained, then and in such case all buildings, fixtures, and improvements, then situate upon said demised premises, shall belong to and be the property of said lessor; and no compensation therefor shall be allowed or paid to said lessee."

The leases provide for appraisal at the expiration of the term of the "actual cash value of any and all buildings," etc. "In making said appraisement of the value of said improvements, the appraisers or court shall take into consideration the suitableness of said improvements as to character and condition to secure the largest returns from the demised premises to the owner thereof, and the appraised value of said improvements shall in no case exceed the difference between the value of the entire property, land, and improvements as a whole and the value which said demised premises would then have if vacant."

Appellant in open court agreed to waive this last-quoted provision and to forego the payment of the sums thus fixed as the value of the improvement. Inasmuch as these clauses do not specifically deny appellant's right to rebuild, it is argued that they, like the ordinary document void on its face, furnish no basis for this suit.

There are numerous authorities, particularly under state statutes, that hold an instrument void on its face may be a sufficient cloud to sustain a suit to remove it. See cases cited above. The clauses complained of herein, however, are not void. Moreover, there is sufficient doubt, faint or substantial, to impair, as the bill alleges, plaintiff's use and enjoyment of its leasehold.

[12] (d) Has plaintiff an adequate remedy at law? If it has, we, at least, have been unable to find it. It has invested a large sum of money in this leasehold. It has paid many hundreds of thousands of dollars in rent and taxes. It has constructed a building according to plans which met with the approval of the architects at the time the structure was designed. The building no longer serves its purpose. The structure is insufficient. The foundations have sunk so as to impair its safety. It is not in accord with the prevailing and accepted building art of today. In order that the rents and taxes may be paid, there must be additional stories erected. They cannot be safely added upon foundations as they exist. These are the allegations of the bill.

Is it an adequate remedy to say to the plaintiff: You may tear down your building, in which case an action at law will be brought against you, and, if your contentions are not upheld, you will be ousted, and all you have invested will be lost? True, this court cannot make contracts for the parties. It cannot remake leases for competent parties who have contracted. But it can, and does, say that plaintiff's remedy at law is not adequate when it must stake its entire investment—risk loss of its leasehold, perhaps—as a condition upon which it may judicially ascertain its legal rights.

In determining whether appellant has an adequate remedy at law, it is important to bear in mind the word "adequate." Complainant may have redress at law, but such remedy may nevertheless be inadequate. 10 R. C. L. 275; Haines v. Trueblood et al., 67 Ind. App. 456, 119 N. E. 383; Union Pac. R. R. Co. v. Weld County, 247 U. S. 282–285, 286, 38 S. Ct. 510, 62 L. Ed. 1110.

It has been held that a remedy at law is inadequate unless it be in the control of the party seeking relief. Delay alone may furnish sufficient justification for a successful appeal to equity, and delay is unavoidable and its duration uncertain, where a resort to legal redress is dependent on the action of an adversary. Fredenberg v. Whitney (D. C.) 240 F. 823; Bank of Kentucky v. Stone (C. C.) 88 F. 383. The rule is stated in Fredenberg v. Whitney thus:

"In these days of industrial expansion, parties should have a right to have any issue which involves their financial status speedily adjusted, and this right should not be permitted to rest upon the discretion of the other party, and a legal remedy, to be adequate, must be a remedy which the party himself controls and can assert at the moment. When there is a doubt in the mind of the chancellor as to the adequacy of the remedy, that doubt should be resolved in favor of the petitioners."

In the present suit, it is true, appellant may provoke appellees to action. It may so act as to give each of them a right to institute an action in law. But such a course will occasion vexatious and unavoidable delays, due to the number of actions that must be instituted and tried.

Throughout this opinion we have endeavored to avoid its undue prolongation by an analysis of the numerous decisions cited which bear upon the legal questions involved. The decisions are without number that deal with the question of equity jurisdiction. It would be a hopeless task to attempt to analyze each one, or even to satisfactorily reconcile them. Two cases, however, deserve special attention, for, if it be necessary to fortify or sustain our conclusions by judicial precedents, then these decisions merit citation. The two cases are Rector v. Rector, 201 N. Y. 1, 94 N. E. 191, and McArthur v. Hood Rubber Co., 221 Mass. 372, 109 N. E. 162.

Both cases are authority for the conclusion here reached that a removable cloud on title may arise in the instrument through which plaintiff traces its title. They also support the position that a negative covenant may constitute a removable cloud on title. Both opinions are vigorously assailed. The Rector decision, it is argued, was by a divided court; and it is contended that the McArthur Case was later overruled by the same court.

The attack on the Rector decision, because it was rendered by a divided court, needs no answer, except to observe that we are interested in the soundness of the prin-

ciple announced rather than in an academic discussion of the weight accordable to opinions of the majority of divided courts. We appreciate that this decision may well be called an advanced one. ("A novel one," 22 Harvard Law Review, 543.) Its persuasiveness, however, lies, not in its isolation, or in its uniqueness, but in its appeal to conscience.

We do not agree that the decision in the McArthur Case was overruled by the Riverbank Improvement Co. v. Chadwick, 228 Mass. 242, 117 N. E. 244, L. R. A. 1918B, 55. The issues were different in the two cases.

In this opinion we have refrained from stating appellees' fact position regarding this clause in the lease. We have done so for the reason that we are not concerned with the controverted facts bearing on this issue. We want the District Court to know that we have not in any way intimated our views respecting these facts, or the persuasiveness of the facts on either side. Our sole question is to determine whether a court of equity should take jurisdiction of the suit. The trial court must determine whether the facts justify the relief sought, and its approach to this question should be uninfluenced by anything we may have said on the legal question here under consideration.

### Mortgagees.

[13] The trust company representing the bondholders has a lien on the building, and it has joined the fee owners in objecting to the court's jurisdiction. There is no controversy as to the existence of such mortgage, and the legal question it presents cannot be ignored. Mortgagee asserts its position to be one with vested rights that cannot be disturbed without its consent. But in what is the mortgagee interested? Wherein is it prejudiced? It is interested in its lien —nothing more. Its lien covers the leasehold to the extent of about $1,250,000. The building in question adds to its security; hence, its interest. But it is in the security, nothing more, that it is interested. While it is hard to see how its security may be impaired, yet, relying on the letter of its bond, it asserts that the security may not be changed without its consent.

But, if appellant's position is correct, the mortgagee took its bonds subject to appellant's right to replace the present structure with a new one. If the right to rebuild is an implied right, rising from the grant of a 198-year lease, wherein has a mortgagee any legitimate complaint if the mortgagor does rebuild, and, as here, offers to deposit a bond or cash to protect the mortgagee.

Appellant's right to maintain the suit is predicated upon its implied right to rebuild, which arises from the grant of a 198-year lease. Such right, if it exists at all, appeared in the recorded title of the mortgagor when the mortgage in question was executed. Mortgagee cannot now complain of the exercise of a right of which it had notice. Particularly is this so where, as here, the mortgagor offers cash or bond security in twice the amount of the mortgage during the period of construction, or until such time as the court fixes. If the trial court, upon trial of the issue of fact, ultimately determines that appellant has no right to replace the Auditorium building with a new structure, then, of course, the mortgagee's objection to its so doing will be sustained.

[14] This brings us to the second objection advanced by appellees. Does appellant ask merely for a declaratory decree construing its lease and establishing its rights thereunder?

Many cases have been cited (Muskrat v. United States, 219 U. S. 346, 31 S. Ct. 250, 55 L. Ed. 246; United States v. Alaska Steamship Co., 253 U. S. 113, 40 S. Ct. 448, 64 L. Ed. 808; United States v. Hamburg-Amerikanische Co., 239 U. S. 466, 36 S. Ct. 212, 60 L. Ed. 387; California v. San Pablo & T. R. Co., 149 U. S. 308, 13 S. Ct. 876, 37 L. Ed. 747), and many others might be added, holding that a court is empowered to hear only actual controversies. They cannot pronounce declaratory decrees which decide abstract propositions for the future guidance of parties interested. But if the instant suit is properly cognizable in a court of equity, one to remove a cloud on title, and we hold that it is, it may be maintained, and is distinguishable from the above-cited decisions upon which appellees rely.

We cannot close this opinion without expressing our appreciation of the particularly able and helpful briefs which counsel for both sides have submitted.

The decree is reversed, with direction to the District Court to hear the evidence and determine the issues involved.