## MURROW INDIAN ORPHANS' HOME v. FEATHERSTONE.

No. 10545—Opinion Filed Feb. 7, 1922.

Rehearing Denied March 7, 1922.

(Syllabus.)

**1. Statutes—Construction—Practical Construction.**

Where the meaning of the statute is doubtful, great weight is given to the construction placed upon it by the department charged with its execution.

**2. Statutes — Construction — General and Special Provisions.**

Where there are two provisions of the statutes, one of which is special and particular and clearly includes the matter in controversy, and where the special statute covering the subject prescribes different rules and procedure from those in the general statute, it will be held that the special statute applies to the subject-matter, and that the general statute does not apply.

**3. Indians—Conveyance of Land—Validity.**

Melvina Adams, a full-blood citizen of the Choctaw Tribe, on December 22, 1903, selected 80 acres as part of her allotment, the same having been set aside or reserved by the Commissioner to the Five Civilized Tribes, in order that the same might be donated to the Murrow Indian Orphans' Home. On February 10, 1904, Melvina Adams filed with the Commissioner to the Five Civilized Tribes an affidavit that said land was selected by her for the benefit of said home. Thereafter patent was issued to her, and thereafter Congress, in section 14 of the act of April 26, 1906, authorized members of the Five Civilized Tribes to donate portions of their allotments to said home. and on July 2, 1909, Melvina Adams conveyed said land by deed to said home, which deed was approved by the Secretary of the Interior on July 8, 1912. Held, said conveyance, when approved by the Secretary of the Interior, was carrying out the intent and purpose of the act of Congress and said deed is not void, nor in violation of section 19 of the act of April 26, 1906, nor section 5 of the act of May 27, 1908.

Error from District Court, Coal County; J. H. Linebaugh. Judge.

Action by Irvin Featherstone against the Murrow Indian Orphans' Home for possession of land and to quiet title. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

S. H. Lattimore, for plaintiff in error.

G. T. Ralls, for defendant in error.

McNEILL, J. This action was commenced in the district court of Coal county by Irvin Featherstone to recover possession of 80 acres of land and to quiet title in said plaintiff against the Murrow Indian Orphans' Home, and to declare a deed to said home executed by Melvina Adams, the allottee, and approved by the Secretary of the Interior, null and void. To said petition, the defendant answered, alleging it is the owner of said land and in possession thereof, and that Melvina Adams was a full-blood citizen of the Choctaw Tribe and the land was selected and allotted by her for the use of the defendant, and since the selection thereof, she executed her deed to defendant, which was approved by the Secretary of the Interior. That her selection of said land for the benefit of said defendant was affirmed by an act of Congress, to wit, section 14 of the act of April 26, 1906 (34 Stat. 137), and thereafter Melvina Adams executed her deed, which was approved by the Secretary of the Interior.

It was stipulated in the trial of the case that Melvina Adams was a full-blood citizen of the Choctaw Nation and selected the land herein December 22, 1903. Thereafter patent was issued to her, a certified copy of which was introduced in evidence. On July 2, 1909, Melvina Adams executed a deed conveying this land and other lands to the Murrow Indian Orphans' Home. The deed was approved by the Secretary of the Interior July 8, 1912, the approval being as follows:

"Approved. Department of the Interior. Washington, D. C., July 8th, 1912. Approved except as to the south half of northeast quarter, section 23, township 2 north, range 11 east, which tract was reconveyed by the Murrow Indian Orphans' Home by quitclaim deed of June 12, 1912, to Melvina Adams. Samuel Adams, Asst. Superintendent."

The deed was duly recorded on July 24, 1912, in Miscellaneous Deed Record, Book One, page 292, record of the Five Civilized Tribes, and recorded August 27, 1912, in book 19, page 192. Deed Record of Coal county, Okla.

That on July 1, 1913, Melvina Adams made a will and devised the land in question to Wilburn Adams and Lizzie Pusley. That on January 5, 1915, Wilburn Adams and Lizzie Pusley conveyed the land to plaintiff by deed, which deed was on January 8, 1915, approved by the judge of the county court of Latimer county.

The defendant introduced in evidence a letter from the Interior Department regarding the reserving and selecting of this land. Also an affidavit made by Melvina Adams and filed with the Interior Department.

The trial court upon the admitted facts rendered judgment for the plaintiff and against the defendant. From said judgment, the defendant has appealed.

The only question involved is the effect of the conveyance made by Melvina Adams to the Murrow Indian Orphans' Home, the same being approved by the Secretary of the Interior. In considering the rights of the plaintiff in error to this land it is necessary to look to the act of Congress and the interpretations placed upon said act by the Department of the Interior relating to transfer of this land to said home. It is stipulated that Melvina Adams selected this land on December 22, 1903. On January 6, 1904, E. A. Hitchcock, Secretary of the Interior, wrote a letter to the Commissioner to the Five Civilized Tribes regarding the Murrow Indian Orphans' Home, the material parts of said letter being as follows:

"November 30, 1903, you informed the Department that on November 28, D. N. Robb, of Atoka, Indian Territory, representing the Murrow Indian Orphan Home relative to the desired temporary reservation from the allotment of the lands of the Choctaw Nation of certain lands where the directors of the home contemplate erecting substantial buildings for the accommodation and use of Indian orphans, appeared before your Commission and explained the purpose and plans of the home.

"It appears that said orphan home is located at Atoka, Choctaw Nation, and has been in existence and under the supervision of Rev. J. S. Murrow for about 18 years; that the object of this institution is to afford to Indian orphans, of whatever tribe, a home and chance for education, both of a technical and a practical character; that the buildings at Atoka now occupied by the home are the property of the Choctaw Baptist Academy, and are only being temporarily used by this orphan home. The home is now affording accommodation for 85 orphan Indian children, the great majority of whom are Choctaws and Chickasaws.

"You report that Mr. Robb represents that he has assurances from over 200 citizens of the Choctaw Nation that for the support and use of this school they are willing to contribute from ten to 60 acres of their allotments; that the directors of the home are desirous of permanently establishing it about 18 miles northwest of Atoka on the line of the Western Oklahoma Railroad; that the home will require for its purpose practically 3,500 acres of land; that he stated to you that the S.½ of sec. 23, all of sec. 24, the N.W.¼ of the N.½ of the N.E.¼ and the S. W.¼ of the N. E.¼ and the N. W.¼ of the S.W.¼ of sec. 25, and all of sec. 26, in T. 2, N. R. 11 E. and secs. 18 and 19 in T. 2 N. R. 12 E. are not taken and are not

held or claimed by any citizen or freedman of the Choctaw or Chickasaw Nations, and he requested your Commission to temporarily reserve this land from allotment and to permit the same to be selected by citizens of the said nations in such acreage as they may desire, for the use and occupancy of the Murrow Indian Orphan Home. * * *

"You suggest that in the event the request is granted, where citizens of the Choctaw and Chickasaw Nations desire to contribute a portion of their allotments for the use and support of this home, that they be not required to go upon and examine the land. Other communications in regard to the matter have been received, a letter from Mr. Murrow of December 2, 1903, and one from A. Grant Evans, of Henry Kendall College, Muskogee, Indian Territory, of December 1, 1903. * * *

"Reporting in the matter December 16, 1903, the Commissioner of Indian Affairs states that he believes that it would be proper exercise of the discretion of the Department to authorize your Commission to withhold the lands described from general allotment, in the meantime taking steps to see that there are no prior claims to any of the lands by any citizens or freedman of the Choctaw or Chickasaw Nations; that the friends of the institution should be urged to procure the selection of these lands by persons who propose to donate them at the earliest possible moment.

"While no specific statutory authority exists authorizing the Department to reserve lands for the purpose desired in this instance, it is considered it is vested with discretionary power in such matters, and you are accordingly advised that the tracts mentioned are hereby temporarily reserved for the purpose indicated.

"Relative to your suggestion that where citizens of the Choctaw or Chickasaw Nations desire to contribute a portion of their allotments for the use and support of this home, that they be not required to go upon and examine such lands 'but that they make application for the allotment of the same for the use and occupancy of the Murrow Indian Orphan Home', you are advised that the question of what an allottee may do with the land selected from these tracts, with a view of donating it to this home, is not one for the Department. No objection is seen to your waiving any requirement relative to the examination of the land by such applicants. You will advise the parties in interest hereof. A copy of the Commissioner's letter of December 16, 1903, is inclosed."

On February 10, 1904, Melvina Adams made the following affidavit and filed the same with the Commissioner to the Five Civilized Tribes:

"In the matter of the application of Melvina Adams for an allotment of lands in

the Choctaw-Chickasaw country to herself whose name appears as number 9477, on the approved schedule of Choctaws by blood of Atoka, Indian Territory, being first duly sworn, makes affidavit as follows:

"That my name is Melvina Adams, that my age is——years, that I am a citizen by blood of the Choctaw Nation, that my enrollment as such was approved by the Secretary of the Interior February 4, 1903, my name appearing upon the final roll of the citizens by blood of the Choctaw Nation opposite number 9477; that on the 22nd day of December, 1903; I personally appeared before the Choctaw Land Office of the Commission to the Five Civilized Tribes, at Atoka, Indian Territory, and then and there selected as a portion of my allotment of the lands of the Choctaw and Chickasaw Nations the following described tracts, to wit:

"E.½ of S. W.¼, sec 23, T. 2 N. R. 11 E.. containing 80 acres of the appraised value of $260.

"That I do not intend to use the aforesaid described land or any portion thereof, or dispose of the same to any other person by sale, lease, or contract, and that I in good faith selected such tract of land for the use and occupancy of the Murrow Indian Orphan Home."

The record disclosed the Commissioner to the Five Civilized Tribes, on November 30, 1903, wrote to the Department of the Interior that this land, together with other lands, had not been claimed by any citizen of the Choctaw Nation, and requesting the Commissioner to reserve this land and other land and permit the same to be selected by the citizens of the Nation, or such acreage as they desired, for the use and occupancy of the Murrow Indian Orphans' Home. The record then disclosed that on December 22, 1903, Melvina Adams selected this identical land, together with other land, as a portion of her allotment. On February 10, 1904, which was before the patent was issued to her, she made an affidavit that she had selected this land for the use and occupancy of Murrow Indian Orphans' Home. Thereafter patent was issued to her. Thereafter Congress by section 14 of act of April 26, 1906, provided:

"The Principal Chief of the Choctaw Nation and the Governor of the Chickasaw Nation are, with the approval of the Secretary of the Interior, hereby authorized and directed to issue patents to the Murrow Indian Orphans' Home, a corporation of Atoka, Indian Territory, in all cases where tracts have been allotted under the direction of the Secretary of the Interior for the purpose of allowing the allottees to donate the tract so allotted to said Murrow Indian Orphans' Home."

The question is, Does this land come within this provision of the act? The land was reserved by the Commissioner for this purpose. The allottee after filing on the same, and before receiving patent, made an affidavit that it was selected for the purpose of donating it to the home. We then have the Assistant Secretary of the Interior when approving the deed construing the act of Congress as giving him the authority, and that this land comes within this provision of the act of Congress. He wrote as follows:

"It is the opinion of the Department that it lies within the discretion of the Secretary to approve these deeds at the present time. The provisions of law applicable to the matter must be read in the light of the history of the Murrow Indian Orphans' Home. * * * The plan was indorsed by the General Council of the Choctaw Nation in a resolution approved by the Principal Chief November 5, 1903 * * * (Setting forth a history of the correspondence and negotiations.) The character of the school being well known to the Department, and its usefulness being demonstrated, Congress, by section 14 of the act of April 26, 1906 (34 Stat. 137), placed its stamp of approval upon the undertaking. That section reads, in part, as follows. * * *

"It is clear from the foregoing provisions of law that certain allotments had theretofore been made for the purpose of allowing the allottee to donate the tracts so allotted to the Murrow Indian Orphans' Home, that Congress sanctioned this plan, and that it intended by this act to confirm what had been done, and to provide a method of effectuating actual conveyance to the home. It is not material that the act provided for the conveyances to me made by the Principal Chief of the Choctaw Nation, and the Governor of the Choctaw Nation, instead of by the allottees. That was but the means to an end, and the method so prescribed would have been followed had not the land been actually patented to the allottees, contrary to the intent of the law. It will be entirely within the purpose of the act, and the result contemplated by it will be accomplished, if these deeds are approved, providing they are otherwise free from objection. The rule of construction to be followed in this case is that which relates to laws affecting instructions of a public or quasi public nature. Such acts should be construed with sufficient liberality to permit of the accomplishment of the legislative intent, and technical feature of the law should not be allowed to control.

"At the same time, it is deemed advisable, in order that the acquiescence of the tribe in the proposed plan may become a matter of record, that the chief executives of said tribes be also called upon to execute deeds for the tracts in question. in favor of the said Orphans' Home, such deeds to be ap-

proved by the Secretary of the Interior in the usual manner.

"It is true that provision was made in section 19 of said act of April 26, 1906, that no full-blood Indian of said tribes shall have power to alienate, sell, dispose of, or incumber in any manner lands allotted to him for the period of 25 years, unless such restrictions shall, prior to the expiration of said period, be removed by Congress; also that every deed executed before, or for the making of which a contract or agreement was entered into before the removal of restrictions, shall be void. A similar provision was incorporated as section 5 of the act of May 27, 1908 (35 Stat. 312). It is sufficient to say that these provisions are of a general nature and contain nothing whatever indicating an intention to repeal the special provisions in the act of April 26, 1906, designated to permit allottees to donate portions of their allotments to the Murrow Indian Orphans' Home. It is therefore deemed immaterial that the deeds now submitted for approval were executed in the year 1910, prior to the removal of restrictions from said allottees."

This construction should be given great weight, as was said in the case of Blanset v. Cardin, 261 Fed. 309:

"Where the meaning of the statute is doubtful, great weight is given to the construction placed upon it by the department charged with its execution."

It is contended by the defendant in error that this was a conveyance of restricted land and was void and in violation of the act of May 27, 1908 (35 Stat. L. 312, c. 199). The Secretary of the Interior in approving the deed held the conveyance was not in violation of said act, but the same was a conveyance as contemplated by section 14 of the act of April 26, 1906, and one being a general statute and the other being a special statute and including the matter in controversy, the special statute would control. This is the general rule of construction applied to conflicting provisions of the statute. As was said by this court in the case of the Muskogee Times-Democrat v. Board of Com'rs, 76 Okla. 188, 184 Pac. 591:

"Where there are two provisions of the statutes, one of which is special and particular and clearly includes the matter in controversy, and where the special statute covering the subject prescribes different rules and procedure from those in the general statute, it will be held that the special statute, applies to the subject-matter, and that the general statute does not apply."

Plaintiff, however, contends this identical question was decided by this court in the case of McClendon v. Murrow, 64 Okla. 205, 166 Pac. 1101. There is this distinction, however, in the two cases, or at least as disclosed by the record, to wit: In the first place in the McClendon Case the Secretary of the Interior never attempted to reserve the land for the benefit of the home irrespective of his authority so to do. Second, no affidavit was filed by the allottee prior to the time of receiving the patent that the land was selected by her for the use and benefit of the home. Third, no contention was made in the former case that the conveyance was one that came within section 14 of the act of April 26, 1906. This court did not construe section 14 of the act of April 26, 1906, in that case, nor does it appear that said act was called to the court's attention, but the parties in that case relied upon removal of restriction, as provided in the act of April, 21, 1904, c. 1402, 33 Stat. 204. Nowhere in the opinion does this court refer to section 14 of the act of April 26, 1906, nor was it considered by the court. While in the instant case the Secretary of the Interior approved the act, believing the conveyance was a conveyance coming within that section of the act of Congress, and when the general rule of construction is applied to the acts of Congress, we think the holding of the Secretary of the Interior correct, and should not be disturbed unless clearly erroneous. This being true, the court erred in canceling the said deed and quieting title in said plaintiff.

The judgment of the court is reversed, and remanded, with instructions to dismiss defendant in error's petition.

PITCHFORD, V. C. J., and JOHNSON, ELTING, and NICHOLSON, JJ., concur.