464

STANOLIND CRUDE OIL PURCHASING
CO. v. CORNISH et al.
No. 1560.

District Court, W. D. Oklahoma.
Jan. 10, 1935.

Ray S. Fellows, of Tulsa, Okl., for plaintiff.

C. W. King, L. G. Harries, and A. L. Herr, all of Oklahoma City, Okl., Attys. for Oklahoma Tax Commission, for defendants.

VAUGHT, District Judge.

The plaintiff brings this action alleging that it is a nonresident corporation; that it has been and is now engaged in the business of purchasing on the open market in the state of Oklahoma, crude petroleum, or oil produced from lands situate within said state, delivery of such oil being made by the owners thereof in the tankage into which such oil is run from the wells producing the same; "that ever since the first production of oil in what is now the State of Oklahoma, there has existed a universal custom, usage, and method for measuring and determining the gross amount of oil produced from wells and sold and purchased in tankage, which custom, usage, and method, during all of such time, was well known to and used by all persons engaged in the oil business whether as producer, seller or buyer, by which custom, usage and method the oil as produced from the wells was run into tanks, in which tanks such oil was purchased and sold; that measurements of the dimensions of such tanks were made and the capacity of such tanks was calculated and determined in barrels and fractions of barrels, and so-called 'tank tables' were prepared showing the capacity of said tanks in barrels or fractions of barrels from which said tank tables the amount of oil in barrels and fractions of barrels contained in or run from such tanks could be readily computed and ascertained by measuring the depth of the oil in such tanks before and after any amount thereof had been run therefrom; that such method of measurement is now and during all of said period of time has been exclusively used by all producers and purchasers of oil to determine the total amount of oil produced, sold and purchased; that as oil is produced from the earth, it contains quantities of sand, gravel, water, and other impurities and foreign substances which form no constituent part of such oil, but on the contrary detract from its value, quantity and quality; that when oil is stored in tanks for a sufficient length of time, much of such foreign substances or 'bottom settlings' are left at the bottom of such tanks when oil is run therefrom and thereafter such foreign substances or bottom settlings are taken from such tanks and destroyed; that a portion of such foreign substances remain in suspension in such oil and can finally be eliminated therefrom only at refinery during the process of refining such oil; that oil is fluid, mobile, volatile, expansive, and contractive in character and the number of barrels in any quantity of oil will increase or decrease as its temperature rises or falls; that as oil is produced from the earth, its fluid and volatile character is such that it evaporates, dissipates, and loses much of its gaseous content, thereby reducing its volume and specific gravity, and such reduction is more or less continuous so long as it exists in the form of

crude oil; that the presence of the solid matter, impurities, and foreign substances, as aforesaid, in the oil when produced, and the fact that the oil is subject to diminution in volume by reason of evaporation and by reason of losses in its gaseous content and by reason of changes in temperature, all result in the lessening of its value in its crude state and are, and always have been, factors taken and to be taken into consideration in determining the value thereof at the time of its purchase and in establishing the market price to be paid therefor; that in order to provide and allow for the loss in quantity of the oil resulting from the presence of such foreign substances therein and occasioned by the inherent qualities and characteristics thereof as herein set forth, in the making of the calculations and the preparation of the tank tables as hereinbefore set forth, a deduction is uniformly made of three per cent. from the total capacity of such tanks and such deduction is part and parcel of the above described method of calculating and determining, in barrels, the oil content of such tanks, the number of barrels of oil produced from the ground, the number of barrels run from such tanks and the number of barrels paid for on the sale thereof; that at all times since the first production of oil in what is now the State of Oklahoma, it has been and now is the universal trade custom and practice in said state to make said deduction of three per cent. in volume whenever oil is measured for the purpose of computing its quantity or value; that said method of measuring and valuing oil, inclusive of such deduction, is now and at all of the times herein mentioned, has been the only method used in ascertaining the total amount of oil produced and in determining the actual value thereof at the place of production, the amount of oil sold and the number of barrels to be paid for upon purchase thereof; that if the above described method were not employed, then the producer of oil would be required to provide, at great cost and expense, storage facilities into which the oil could be run and settled and would be required to install and maintain, at great cost and expense, a system of gauging and sampling of said oil before sale thereof; that in recognition of the method of measurement and determination of value above set forth, it has, during all of the times herein mentioned, been the universal practice between the buyers and sellers of oil upon the open market, to buy and sell oil upon written contract or division order, under and by virtue of which it is agreed that the three per cent. deduction heretofore referred to shall be made; that each, all and every of the several laws of the State of Oklahoma providing for a gross production tax on oil have laid and imposed such tax according to the value of the oil and not according to the volume thereof; that the legislature of the State of Oklahoma, at the time of enacting each and every of the gross production tax laws levying a tax upon the value of the oil produced in Oklahoma, well knew of the existence of such method of measuring oil and computing the price to be paid therefor and enacted such laws with due regard to such trade custom, usage and method, intending and knowing that the total production of such oil and the value thereof would be ascertained by such method; that the officials of the State of Oklahoma charged with the execution and administration of such laws and the collection of such gross production taxes upon such oil have, ever since the enactment of the first of said laws in 1908 and to and after the 1st day of July, 1931, construed and interpreted such laws as requiring such tax to be paid upon the value of such oil computed and ascertained in the manner and by the method as herein set forth; that at all of the times herein mentioned, all oil bought and sold upon the open market in the State of Oklahoma was measured and its value determined in accordance with the universal practice and method hereinabove described."

The plaintiff further alleges that it had made its reports promptly according to law and according to the method hereinbefore set out, but that on the 29th of November, 1932, the defendant Cornish, purporting to act as the chairman of said Oklahoma Tax Commission, notified the plaintiff that there was then and there due from this plaintiff to the state of Oklahoma, additional gross production taxes upon oil purchased by this plaintiff between the 30th of June, 1931, and October 1, 1932, which said taxes, together with the alleged accrued penalties, computed from the period of alleged delinquency to and until the 20th day of November, 1932, amounted to the sum of $28,618.12.

The petition further alleges that this tax so demanded of the plaintiff and the further taxes thereinafter demanded, all as set out in the petition, were based on

the proposition that the plaintiff had failed to pay, for or on behalf of the owners of said oil produced, tax upon three per cent. of the oil actually produced; and the gross production tax demanded of this plaintiff by said tax commission is based upon the assumption that the plaintiff had failed to pay any gross production tax upon 3 per cent. of the oil produced by the owners of the lease and purchased by this plaintiff. The plaintiff further alleges that it has paid gross production tax upon the value of all oil produced by it during the times alleged in said petition, and asks that the defendants, and each of them, be enjoined from the collection of said alleged tax.

The defendants filed their motion to dismiss on the grounds that this court is without jurisdiction and that the bill is without merit. The court reserved its ruling at the time of the motion to dismiss and the defendants answered, denying the allegations of the bill generally, and alleging that the true measure of the value of oil produced was on the basis of 100 per cent., and that the plaintiff, and those represented by it, had failed to pay the gross production tax upon the 3 per cent. of the oil purchased by it.

█ The motion of defendants to dismiss is overruled and an exception allowed, the court being of the opinion that it has jurisdiction. Shaffer v. Carter, 252 U.S. 37, 40 S.Ct. 221, 64 L.Ed. 445; Hopkins v. Southern California Telephone Co., 275 U.S. 393, 48 S.Ct. 180, 72 L.Ed. 329; Fredenberg v. Whitney (D.C.) 240 F. 819; Chicago Auditorium Ass'n v. Willing (C. C.A.) 20 F.(2d) 837; Sneed v. Shaffer Oil & Refining Co. (C.C.A.8th Circuit) 35 F.(2d) 21; Roadway Express v. Murray (D.C.) 60 F.(2d) 293.

The plaintiff also asked leave to amend its petition to show all transactions between plaintiff and defendants from the date of filing its original bill down to the trial of the case.

The defendants, also, at the conclusion of the evidence, moved to amend their answer by eliminating the following: "The defendants admit that it is their purpose and intention in the event that the court shall determine that the above named plaintiff is indebted to the State of Oklahoma for gross production tax in the amount alleged in its bill of complaint or any other amount, to issue warrants of the State of Oklahoma against said company, and to compel and force the payment of the tax

found to be due," and substitute therefor the following statement: "To cause to be issued proper process against said company and compel and enforce the payment of the tax found to be due, and for which they issue process of the court."

The testimony of Ray S. Fellows, one of the attorneys for complainant, that the members of the commission advised him that they intended to issue warrants for the collection of said tax and to "proceed to protect yourselves against this tax," is not contradicted.

The evidence convinces the court that it was the intention and purpose of the defendant commission to issue the tax warrants. However, the motion to amend will be sustained, and the defendants will be permitted to amend their answer as prayed. But the amendment to the answer will not change the impression that the court has, that it was clearly the purpose and intention of the commission to issue the warrants from time to time as these alleged taxes accrued.

The temporary restraining order was issued, and the hearing on the application for a temporary injunction by stipulation was made a hearing on the issues in the case and for a permanent injunction. The cause was presented on its merits and the rulings on the motions as hereinbefore indicated were made. Exception allowed. [2] As to the merits of the case, the court will now proceed to consider the evidence. Oklahoma Statutes 1931, § 12428:

"The gross production tax on petroleum oil, natural gas or casinghead gas, as provided by law, shall, after June 30, 1931, be paid on a monthly basis in accordance with this Act.

"Said tax shall become due on the first day of each calendar month on all petroleum oil, natural gas or casinghead gas produced and saved during the preceding monthly period, and if the tax is not paid on or before the end of said month the same becomes due the tax shall become delinquent and shall be collected in the manner provided by law for the collection of delinquent gross production taxes.

"On oil, gas or casinghead gas sold at the time of production the gross production tax thereon shall be paid by the purchaser of such products and such purchaser shall, and is hereby authorized to deduct in making settlements with the producer and/or royalty owner the amount of

tax so paid; provided, that in the event oil on which such gross production tax becomes due is not sold at the time of production but is retained by the producer, the tax on such oil not so sold shall be paid by the producer for himself including the tax due on royalty oil not sold; provided, further, that in settlement with the royalty owner such producer shall have the right to deduct the amount of such tax so paid on royalty oil, or to deduct therefrom royalty oil equivalent in value at the time such tax becomes due with the amount of the tax paid.

"Casinghead gas when utilized in the manufacture of casinghead gasoline by the producer shall be considered for the purpose of this Act as to the amount utilized as casinghead gas actually sold.

"In case oil, gas or casinghead gas is sold under circumstances where the sale price does not represent the cash price thereof prevailing for oil, gas or casinghead gas of like kind, character or quality in the field from which such product is produced, the Oklahoma Tax Commission may require the said tax to be paid upon the basis of the prevailing price then being paid at the time of production thereof in said field for oil, gas or casinghead gas of like kind, quality and character."
and section 12429:

"The tax herein provided for shall, after June 30, 1931, be paid to the Oklahoma Tax Commission; and the person, firm, association or corporation paying the tax shall file with said commission at the time the tax is required to be paid, a statement, under oath, on forms prescribed by said commission, giving with other information required, the following:

"(A) Description of the property from which said oil, gas or casinghead gas was produced;

"(B) The name of the producer;

"(C) The gross amount of said oil, gas or casinghead gas produced and saved;

"(D) The total value of such oil, gas or casinghead gas at the price paid therefor, if purchased at time of production; and

"(E) The prevailing market price of oil not sold at time of production; provided, that in lieu of such statement, a purchaser of oil, at time of production, may furnish a true verified copy of the regular settlement sheet in use by such purchaser,

if such sheet contains all the information required"
are the sections of the Statutes under which the Oklahoma Tax Commission seeks to collect the additional tax upon the 3 per cent. alleged by them not to have been reported to the tax commission.

If the court understands this case, the questions for determination are whether or not, when the plaintiff purchased oil and paid for same on a basis of 97 per cent., it purchased all of the oil, or 100 per cent., and when it reported its gross production tax on the basis of the price paid by it for the oil, whether or not it paid the gross production tax upon all the oil produced.

The evidence in this case was clearly to the effect that since the production of oil in Oklahoma, the rule adopted by the plaintiff in the purchase of oil in Oklahoma on the basis of 97 per cent., was not only the rule that had been adopted by the oil companies of the state, but it was the rule in Pennsylvania long before there was any production of oil in Oklahoma. The price of oil depends not only upon the contract between the purchaser and seller of oil, but the demand for oil, competition, and many other elements enter into the basis for fixing prices. The evidence is clear, however, that the rule in Oklahoma, among all the purchasers of oil, has been the rule used by the plaintiff as alleged in this case. The court is of the opinion that it does not make any difference what the standard is so long as all use this standard. For instance, if a tank should contain 50,000 barrels of oil, it would make little difference if the purchaser believes that that tank of oil is worth 97 cents a barrel, or $48,500, whether he pays $48,500 for the tank of oil based on the price of 97 cents a barrel, or whether he purchases the oil on the basis of 97 per cent., or 48,500 barrels of oil at $1 per barrel. The amount paid to the seller or producer would be the same.

We are using the dollar to-day which economic experts say is not the same dollar that we used only a few years ago. That does not change transactions, however, in which the standard dollar has been used. This standard of value in the purchase of oil is designated in the division orders used by various companies and in this case it was shown that the division order of the plaintiff company is as fol-

lows: "You shall deduct three per cent (3%) from all oil received from wells into pipe lines on account of dirt and sediment, and in addition, shall deduct one-twentieth (1-20) of one per cent (1%) for each degree of heat above normal temperature; quantities are to be computed from regularly compiled tank tables. You are to receive merchantable oil only under the terms of this Division Order."

The principal argument of the defendants is that the producers of oil have been deprived of the 3 per cent. of oil produced. In other words, they have been forced to sell 100 per cent. of their oil, but have been paid for only 97 per cent., and because of that fact, the plaintiff has failed to pay to the state of Oklahoma its gross production tax upon three per cent. for which the plaintiff has not paid the producers.

Oklahoma Statutes 1931, § 12429, supra, provides that the purchasers shall report "the gross amount of said oil, gas or casinghead gas produced and saved; * * * the total value of such oil, gas or casinghead gas at the price paid therefor, if purchased at time of production."

It is immaterial what the basis or the formula is by which the seller and the purchaser arrive at the value of the oil. The only question is whether or not the purchaser paid for all of the oil produced and whether or not the state received the gross production tax based upon the price of all the oil produced. The contention of the defendants is that when the purchasers purchased 100 barrels of oil at a price based upon 97 per cent. of the oil that they purchased actually 97 barrels. The court is of the opinion that there is no basis for this contention. The purchasers purchased 100 barrels of oil, but the price for this oil was based upon the 97 per cent. scale or schedule. This rule of determining the price of oil has been approved by the state of Oklahoma. There have been many statutes passed and amendments to statutes, regulating the manner in which the gross production tax shall be paid, and during all of these years since the first gross production tax statute was enacted and including the sessions of the Legislature, at which time the amendments were passed, no objection has ever been voiced to this manner of determining the value of oil produced.

In Hopkins v. Texas Co. (C.C.A.10th Circuit) 62 F.(2d) 691, 692, the court upheld the departmental schedule in customary use relative to casinghead gas, and that court said: "Settlement was made for the casinghead gas, in accordance with the departmental schedule, which was followed by common practice and custom in the Mid-Continent field, where the land was located. That method of settlement is well sustained and should be accepted. It left appellant without any right of recovery."

■ Since this statute has been re-enacted and amended a number of times and no reference has been made to the necessity for a departure from the customary recognition of the 97 per cent. rule, the state will be considered as having approved and acquiesced in such rule.

In United States v. Dakota-Montana Oil Co., 288 U.S. 459, 53 S.Ct. 435, 438, 77 L.Ed. 893, the court said: "Thus the acts of 1918, 1921 and 1924 were consistently construed by the regulations to permit a depletion, but not a depreciation allowance for the costs of development work and drilling, which were treated for this purpose either as a part of the cost or an addition to the discovery value of the oil in the ground. The administrative construction must be deemed to have received legislative approval by the re-enactment of the statutory provision, without material change."

In Pleasant v. Missouri-Kansas-Texas R. Co. (C.C.A.10th Circuit) 66 F.(2d) 842, the court held, quoting from the syllabus: "Where Legislatures, repeatedly meeting, failed to disturb administrative construction of statute as permitting Tax Commission to consider capitalization of earnings in assessing railroad property, construction held deemed to have legislative approval."

The Oklahoma Supreme Court in Elliott v. State, 150 Okl. 275, 1 P.(2d) 370, 371, said: "It appears that officers charged with application of the election laws have so construed the provisions of the act in question; consequently, as in Hoffman v. County Commissioners, 3 Okl. 325, 41 P. 566, and Murrow Indian Orphans' Home v. Featherstone, 85 Okl. 150, 204 P. 1110, we accept the rule of law that, where the meaning of a statute is doubtful, great weight is given to the construction placed upon it by the department charged with its execution."

The act of the First Legislature of Oklahoma in 1908, Sess.Laws p. 640, provides for a gross revenue tax of ½ of 1

per cent. of the gross receipts from the total production of petroleum, or other mineral oil, or of natural gas. The Legislature in 1910, Sess.Laws p. 65, amended the statute, providing that "in computing said tax shall pay on the actual cash value of the entire gross production." Section 6. In 1913, Sess.Laws c. 240, art. 2, § 1, p. 640, the tax was increased to ¾ of 1 per cent "of the gross value of the production of petroleum or other mineral oil, or natural gas." Other amendments were made in 1915. In 1916 (chapter 39), the gross production tax law, as it substantially has existed until 1931, was enacted and in that act it was provided that the tax be increased to 3 per cent. upon the gross value of the oil. The producer, however, was required to show the gross amount of oil produced. Other amendments to the law were made in 1923, 1924 and 1925.

The laws of Oklahoma, with reference to ad valorem taxes, provide that property shall be assessed for taxation at a fair cash value and the gross production tax law provides that this gross production tax shall be in lieu of all other taxes. The gross production tax law of Oklahoma has been construed many times by the Oklahoma Supreme Court. But neither by the Legislature nor by the highest court of the state has the method of computing the value of oil produced been questioned.

The court finds all of the issues in this case in favor of the plaintiff, and the injunction herein is made permanent.

Exception is allowed.