## UNITED STATES v. UNITED STATES FIDELITY & GUARANTY CO.

### No. 6451.

District Court, E. D. Oklahoma.
Sept. 3, 1938.

Charles N. Champion, Asst. U. S. Atty., of Muskogee, Okl., for the United States.

W. G. Stigler, of Stigler, Okl., for Choctaw and Chickasaw Tribes.

Bower Broaddus, of Muskogee, Okl., for defendants.

RICE, District Judge.

Briefly the facts out of which this controversy arose are as follows: In 1902 the trustees for the Choctaw and Chickasaw Nations executed two certain coal mining leases to the Kansas and Texas Coal Company. These leases by assignment became the property of the Central Coal and Coke Company. At the time of the execution of the leases the United States Fidelity and Guaranty Company, a corporation, executed a bond in the sum of $75,000 conditioned upon the faithful performance by the lessee of the conditions named in the leases. The surety company agreed to the various assignments by and through which the Central Coal and Coke Company became the owner of the leases. The Central Coal and Coke Company, a corporation, filed proceedings in bankruptcy under the corporation reorganization law in the United States District Court for the Western District of Missouri. J. M. Bernardin was appointed trustee. In an ancillary proceeding in the United States District Court for the Eastern District of Oklahoma, in a cause entitled First National Bank of Chicago, Illinois, plaintiff, v. Central Coal and Coke Company, defendant, and J. M. Bernardin, receiver, the Superintendent for the Five Civilized Tribes for and in behalf of the Choctaw and Chickasaw Nations filed a claim for royalties and rentals due under the terms of said coal mining leases from the Central Coal and Coke Company to the Choctaw and Chickasaw Nations, the total amount of the claims being $4,800: Upon the trial of this case it was admitted that $2,800 of said claim could not be collected, and the Government contended at this trial that only $2,000 of this claim was valid. The trustee for the Central Coal and Coke Company, J. M. Bernardin, filed an answer denying that there was anything due under said leases, and setting up that there was due from the said Choctaw and Chickasaw Nations to the Central Coal and Coke Company under said leases, and two other leases from the Choctaw and Chickasaw Nations, a sum greatly in excess of the amount claimed by the Superintendent for the Five Civilized Tribes for and on behalf of the Choctaw and Chickasaw Nations. By stipulation the matter was referred by the Honorable Albert L. Reeves, Judge of the District Court of the United States for the Western District of Missouri, to James H. Gordon as Special Master to make findings of fact and conclusions of law with reference to the claim of the United States and the answer thereto of the Central Coal and Coke Company. The Special Master made findings of fact and conclusions of law finding that there was due to the Choctaw and Chickasaw Tribes for advance royalties the sum of $2,000; that the Central Coal and Coke Company had a claim against said sum in the amount of $11,060.90. The Judge of the United States District Court in which the matter was pending approved the findings of fact and conclusions of law as made by the Special Master and entered its judgment decreeing "That the United States in behalf of the Choctaw and Chickasaw Tribes take nothing by virtue of its said claim and that the credit of Nine Thousand Sixty Dollars and Ninety Cents ($9,060.90) of the Central Coal and Coke Company be and is hereby fixed as against the Choctaw and Chickasaw Tribes and to be secured and collected in the manner provided by law." No appeal was taken and said judgment is final. Thereafter the United States of America filed this suit against the United States Fidelity & Guaranty Company, a corporation. The suit seeks to recover against the defendant as the surety of the Central Coal and Coke Company on the bond executed by the defendant at the time the original leases were executed by the Trustees for the Choctaw and Chickasaw Nations. The defendant United States Fidelity & Guaranty Company pleads the judgment of the United States District Court for the Western District of Missouri, wherein the claim of the Central Coal and Coke Company and the claim of the Choctaw and Chickasaw Nations were litigated. The Government contends that the judgment of the United States District Court for the Western District of Missouri is void and is not a bar to its maintaining this suit. The contention of the Government being that before the United States District Court in Missouri had a right to consider the claim of the Central Coal and Coke Company, or any jurisdiction to render a judgment thereon, the same had to be presented to the General Accounting Office of the United States and disallowed, under the provisions of Section 774, Title 28, U.S.C. A., which reads as follows: "In suits brought by the United States against individuals, no claim for a credit shall be admitted, upon trial, except such as appear to have been presented to the General Ac-

counting Office for its examination, and to have been by it disallowed, in whole or in part, unless it is proved to the satisfaction of the court that defendant is, at the time of the trial, in possession of vouchers not before in his power to procure, and that he was prevented from exhibiting a claim for such credit at the General Accounting Office by absence from the United States or by some unavoidable accident."

The defendant contends that the applicable provision of Congress as to its claim is Section 18 of the Act of April 26, 1906 (34 Stat. 137, 144), which is as follows:

"That the Secretary of the Interior is hereby authorized to bring suit in the name of the United States, for the use of the Choctaw, Chickasaw, Cherokee, Creek or Seminole tribes, respectively, either before or after the dissolution of the tribal governments, for the collection of any moneys or recovery of any land claimed by any of said tribes, whether such claim shall arise prior to or after the dissolution of the tribal governments, and the United States courts in Indian Territory are hereby given jurisdiction to try and determine all such suits, and the Secretary of the Interior is authorized to pay from the funds of the tribe interested any costs and necessary expenses incurred in maintaining and prosecuting such suits: Provided, That proceedings to which any of said tribes is a party pending before any court or tribunal at the date of dissolution of the tribal governments shall not be thereby abated or in anywise affected, but shall proceed to final disposition.

"Where suit is now pending, or may hereafter be filed in any United States court in the Indian Territory, by or on behalf of any one or more of the Five Civilized Tribes to recover moneys claimed to be due and owing to such tribe, the party defendants to such suit shall have the right to set up and have adjudicated any claim it may have against such tribe; and any balance that may be found due by any tribe or tribes shall be paid by the Treasurer of the United States out of any funds of such tribe or tribes upon the filing of the decree of the court with him."

Some point is made in the argument as to the interest of the United States in the proceedings had in the Missouri court, as well as in this court. It may be conceded that in either action the United States is a real party in interest, U. S. v. Minnesota, 270 U.S. 181, 46 S.Ct. 298, 70 L.Ed. 539, and is entitled in its own right to maintain actions for and on behalf of the Indian tribes. However, this does not obscure the real fact that in the Missouri court, as well as in this court, the action is maintained for the benefit of the Indian tribes and any recovery by the plaintiff would be the property of the two tribes. Neither does it obscure the fact that the claim asserted by the Central Coal and Coke Company was essentially a claim against the Choctaw and Chickasaw Tribes of Indians (not against the United States), growing out of its contractual relationship with said tribes of Indians, and the Missouri court in adjudicating this controversy was careful to fix the liability as "against the Choctaw and Chickasaw Tribes," and not against the United States.

The judgment of the Missouri court absolved the principal, Central Coal and Coke Company, of any liability under the coal mining leases to the two tribes. The Government in its brief admits that a valid judgment in favor of the principal absolving it from any liability is a good defense in a suit against the surety.

This suit presents the identical claim against the surety, United States Fidelity & Guaranty Company, in this court that was presented against the principal, Central Coal and Coke Company, in the Missouri court. The same parties by the same attorneys appeared in both courts. Herein the plaintiff seeks to recover against the surety what it failed to recover against the principal in the Missouri court. The question for consideration is whether the judgment relied upon is void.

At the outset, in considering the judgment of the Missouri court, it may be stated that this court will reluctantly take the view that the judgment of another court of like jurisdiction is a nullity. Courts do not seek for some ground upon which to set aside the judgment of another court of competent jurisdiction, but rather seek for some theory upon which it may be sustained. Every presumption is in favor of validity until the contrary appears. Voorhees et al. v. Jackson, 10 Pet. 449, 9 L. Ed. 490; Harvey v. Tyler, 69 U.S. 328, 338, 2 Wall. 328, 338, 17 L.Ed. 871; United States v. California & Oregon Land Co., 148 U.S. 31, 13 S.Ct. 458, 37 L.Ed. 354. As was stated in Voorhees et al. v. Jackson, supra [page 472]: "There is no principle of law better settled, than that every act of a court of competent jurisdiction shall be

presumed to have been rightly done, till the contrary appears: .this rule applies as well to every ·judgment or decree, rendered in the various stages of their proceedings, from the initiation to their completion, as to their adjudication that the plaintiff has a right of action. Every matter adjudicated, becomes a part of their record; which thenceforth proves itself, without referring to the evidence on which it has been adjudged."

Another significant statement is made in Voorhees et al. v. Jackson as follows: "The line which separates error in judgment from the usurpation of power is very definite; and is precisely that which denotes the cases where a judgment or decree is reversible only by an appellate court, or may be declared a nullity collaterally, when it is offered in evidence in an action concerning the matter adjudicated, or purporting to have been so."

██ It is fundamental that the three essentials of a valid judgment are, 1st, jurisdiction of the subject matter; 2nd, jurisdiction of the parties; and 3rd, jurisdiction or power to render the particular judgment. The latter provision does not mean that the judgment rendered must be the one that should have been rendered. The power or jurisdiction to decide carries with it the power or jurisdiction to decide wrong as well as to decide right. For example, had the Missouri court upheld the contention of the United States Government and the two Indian tribes and rendered judgment against the Central Coal and Coke Company for the amount sought to-wit: $4,800, and had denied the claim of the Central Coal and Coke Company, no one could contend that the judgment of the Missouri court in that event would be void and, although the Government at this time admits that $2,800 of its claim ·is invalid and that it is entitled to judgment' for only $2,000, no one would contend that the judgment of the Missouri court was void, even to the extent of the $2,800 which the Government now admits it is not entitled to recover. This merely illustrates the difference between an error and a nullity.

██ The remedy to correct an error is by appeal. The record does not reveal why an appeal was not taken from the judgment of the Missouri court. Admittedly the question now raised could have been raised on appeal. The record of the proceedings. before the Missouri court has not been searched to see if the theory of the Government now urged was presented and urged to the Missouri court. Such a search is not deemed to be necessary. We will presume that a matter of such importance was urged there, and will not consider the effect, on the validity of the judgment in a collateral proceeding, of the failure of the United States to direct the court's attention to provisions of the statute and make a timely objection to the admission of the claim.

The Government does not contend that the Missouri court did not have jurisdiction of the parties and jurisdiction of the subject matter. In fact it argues that Section 774, Title 28, U.S.C.A., gives the court jurisdiction and is the only section of the statute that gives the court jurisdiction of a counter-claim or set-off in an action brought by the United States. Having taken the position that the right of set-off exists by virtue of the statute cited the case of Schillinger v. United States, 155 U.S. 163, 15 S.Ct. 85, 39 L.Ed. 108, cited by the Government has no application, for the reason that in that case a claim in tort was asserted against the United States in the Court of Claims, and the holding of the Supreme Court was that the statute did not authorize a claim. in tort against the United States, and for that reason the Court of Claims had no jurisdiction of the subject matter.

██ Under the terms of Section 774, Title 28, U.S.C.A., an individual sued by the United States, desiring to make a claim for a credit to which he deems himself entitled, is not required to allege compliance with the provisions of said section with regard to admitting the claim in order to confer jurisdiction upon the court to consider the same. United States v. Standard Aircraft Corp., D.C., 16 F.2d 307. The language of the act is: "No claim for a credit shall be admitted, upon trial, except * * *", and then follows two conditions under which the claim may be admitted, the first is that it has been presented to the General Accounting Office for its examination and disallowed, and second: "Unless it is proved to the satisfaction of the court that the defendant is, at the "time of the trial, in possession of vouchers not before in his power to procure, and that he was prevented from exhibiting a claim for such credit at the General Accounting Office by absence from the United States or by some unavoidable accident."

It was stipulated herein that prior to the trial in Missouri the claim had not been presented to the General Accounting Office and disallowed. Nothing was said about the other condition under which the claim might be admitted. If this were the only Act of Congress to be considered this court could, and perhaps should, indulge the presumption that the Missouri court, before admitting the claim, found that the claimant was excused from presenting the claim and having it disallowed. But we do not believe that the validity of the judgment of the Missouri court need rest upon this presumption.

■ The defendant here says that Section 774, Title 28, U.S.C.A., had no application to the claim of the Central Coal and Coke Company in the Missouri court. The Central Coal and Coke Company, permitted to intervene in this action, takes the same position. It is asserted that Section 18 of the Act of Congress of April 26, 1906 (34 Stat. 137, 144) is the applicable statute; that the Act of 1906 is a special act applying with particularity to the controversy before the Missouri court, whereas Section 774, Title 28, U.S.C.A., is general in its terms; that the special act controls over the general act. As a general proposition of law this contention is correct. Cook County Nat. Bank v. U. S., 107 U.S. 445, 2 S.Ct. 561, 27 L.Ed. 537; United States v. Chase, 135 U.S. 255, 10 S.Ct. 756, 34 L.Ed. 117; Townsend v. Little, 109 U.S. 504, 3 S.Ct. 357, 27 L.Ed. 1012; State of Missouri v. Ross, 299 U.S. 72, 57 S.Ct. 60, 81 L.Ed. 46; United States v. Mammoth Oil Co., 8 Cir., 14 F.2d 705; Murrow Indian Orphans' Home v. Featherstone, 85 Okl. 150, 204 P. 1110. The Act of April 26, 1906, as evidenced by its title is "An Act To provide for the final disposition of the affairs of the Five Civilized Tribes in the Indian Territory, and for other purposes." In the case of United States v. Rea-Read Mill & Elevator Company, C.C., 171 F. 501, the act was held to apply to suits by the United States on behalf of the Choctaw and Chickasaw Tribes in the District Courts of the United States. From a reading of the act it would appear that provision was being made for just such a proceeding as was had in the Missouri court. Therein the United States, on behalf of the Choctaw and Chickasaw Tribes of Indians, was seeking "To recover moneys claimed to be due and owing to such tribes." The Central Coal and Coke Company sought to set up and have ad-

judicated its claim against such tribes. No claim against the United States, within the meaning of Section 774, Title 28, U.S.C.A., was asserted by the Central Coal and Coke Company. If the validity of the judgment of the Missouri court depended upon a determination as to which of the statutes is applicable we would not hesitate to say that the Act of 1906 is the applicable statute. '

But it is not deemed necessary to pass upon the correctness of the judgment of the Missouri court. Courts are frequently confronted with the necessity of determining which statute is applicable to proceedings. If, in the Missouri court, the parties made the respective contentions now made, the conclusion is inevitable that the court determined to proceed under the Act of April 26, 1906. A mere recitation of the contentions of the parties hereto with respect to the two acts of Congress, and their application to the controversy before the Missouri court, clearly shows that the Missouri court in determining which statute was applicable was acting within its jurisdiction and passing upon a matter necessary for its decision. If it be conceded that the Missouri court was in error in its decision it was such an error as did not go to the jurisdiction of the court. As was said in Insley v. United States, 150 U.S. 512, 14 S. Ct. 158, 159, 37 L.Ed. 1163: "The error, if any were committed, did not go to the jurisdiction of the court, but only to the particular remedy pursued, and the action of that court in respect thereto was binding in a collateral proceeding."

The Government admits in this case that its attack upon the judgment of the Missouri court is a collateral attack.

■ A judgment is not void or subject to collateral attack because it is based on a mistake of law and, although erroneous, it is binding on the parties if not appealed from. Ward v. Coleman, 170 Okl. 201, 39 P.2d 113.

■ It has also been uniformly held that a judgment or decree rendered by a circuit or district court after it has erroneously refused to remand the case to the state court, from which it had been removed, is not void, but must be given effect by all courts, until reversed by the appellate court. Chesapeake & Ohio R. Co. v. McCabe, 213 U.S. 207, 29 S.Ct. 430; 53 L. Ed. 765; In re Metropolitan Trust Co., 218 U.S. 312, 31 S.Ct. 18, 54 L.Ed. 1051. The Metropolitan Trust Company Case just

966

eited held that the judgment overruling the motion to remand was merely erroneous and not void. The case of Phebus v. Search, 9 Cir., 264 F. 407, cited by the Government is not in point, for the reason that in that case the court rendering the judgment had lost jurisdiction of the entire case by reason of a transfer to another court. The law as stated in that case sustains the validity of the Missouri judgment. It is as follows [page 411]: "The test of jurisdiction is the right to decide, not right decision. Judgments of courts, which at the time the judgments were rendered had no jurisdiction to consider or to determine the issues in the respective cases, and whose records at such times disclosed such lack of jurisdiction, are absolutely void, and may be attacked and defeated collaterally. On the other hand, judgments of courts empowered to hear and determine issues relative to the subject-matters and persons to the suits affected by their respective decisions, although such judgments may be illegal and wrong, are simply voidable and are not open to collateral attack."